## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Civil Action No. _____

| | |
|---|---|
| James and Amanda Tjaden, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>Brutlag, Trucke & Doherty, P.A., Spring Lake Park Lumber Co., and Perfekt, Inc.,<br><br>        Defendants. | **CLASS ACTION COMPLAINT** |

Plaintiffs James and Amanda Tjaden, by and through the undersigned counsel, for their cause of action against Defendants Brutlag, Trucke & Doherty, P.A., Spring Lake Park Lumber Co., and Perfekt, Inc., state and allege as follows:

## INTRODUCTION

1.　The Tjadens (the "Tjadens") were defrauded by a general contractor that they had paid in full to build a new home for them, which has wreaked havoc on the Tjadens' lives.

2.　After being victimized by the general contractor, one of the subcontractors, Spring Lake Park Lumber Co. ("Spring Lake Lumber"), filed an invalid mechanic's lien against the Tjadens' property and then filed a foreclosure action against the Tjadens because they would not pay — a second time — for work they had already paid the general contractor to perform.

3.      Spring Lake Lumber hired Brutlag, Trucke & Doherty, P.A. ("Brutlag Firm") and Perfekt, Inc. ("Perfekt") to assist it in filing the mechanic's lien, attempting to collect the alleged debt, and filing the foreclosure action against the Tjadens.

4.      Spring Lake Lumber, Brutlag Firm, and Perfekt proceeded to victimize the Tjadens further—causing them to suffer damages—even though they knew, or should have known, that Spring Lake Lumber had no present right of possession to the Tjadens' property and no right to demand or compel payment to satisfy the invalid mechanic's lien.

5.      As such, the Tjadens now bring this action for actual and statutory damages, reasonable attorney's fees, and costs against Defendants for violations of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et. seq.*, which prohibits certain unfair and deceptive trade practices; the Consumer Fraud Act, Minn. Stat. § 325F.68, *et. seq.*, which prohibits fraud, unfair or unconscionable practice, false pretense, and misrepresentation; the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, which prohibits the unlawful collection of debts, as well as Minnesota common law claims for fraud/intentional misrepresentation, negligent misrepresentation, and slander of title.

## JURISDICTION AND VENUE

6.      Jurisdiction of this court arises under 28 U.S.C. § 1331 for subject matter jurisdiction and pursuant to 15 U.S.C. § 1692k(d) for claims under the Fair Debt

Collection Practices Act.  Jurisdiction of this court also arises under 28 U.S.C. §

1367 for pendant state law claims.

7.      Venue is proper in this District because the acts and transactions occurred

here, Plaintiffs reside in this District, and the Defendants conduct business here.

**PARTIES**

8.      Plaintiffs James and Amanda Tjaden (the "Tjadens") are natural persons

who reside in the City of Andover, County of Anoka, State of Minnesota, at

address 16857 Guarani St NW, Andover, Minnesota, 55304.

9.      The Tjadens are "consumers" as that term is defined by 15 U.S.C. §

1692a(3) or persons affected by a violation of that law. The Tjadens have suffered

an injury in fact that is traceable to the Defendants' conduct and that is likely to

be redressed by a favorable decision in this matter.

10.     Defendant Spring Lake Park Lumber Co. ("Spring Lake Lumber") is a

Minnesota corporation with a registered address and principal office address

located at 8329 Central Ave NE, Minneapolis, MN 55432.

11.     Defendant Brutlag, Trucke & Doherty, P.A. ("Brutlag Firm") is a business

corporation with a principal office located at 3555 Plymouth Boulevard, Suite 117,

Plymouth, MN 55447.

12.     Brutlag Firm transacts business within the State of Minnesota by operating

a law office, practicing law in Minnesota, being licensed in Minnesota, sending

and receiving mail within Minnesota, and repeatedly serving and filing actions in

Minnesota's courts.

13.     Brutlag Firm, a law firm, was retained to collect the alleged debt of the Tjadens in connection with its representation of Spring Lake Park Lumber Co. ("Spring Lake Lumber"), and Brutlag Firm regularly collects debts on behalf of original creditors, like Spring Lake Lumber. Brutlag Firm is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6), who uses an instrumentality of interstate commerce or the mails in a business who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

14.     Defendant Perfekt, Inc. ("Perfekt") is a Wyoming corporation that does business in Minnesota. Upon information and belief, Perfekt has an office located at 1206 N Frontage Rd #B, Hastings, MN 55033, and a registered address located at 2600 Aldrich Avenue S, Minneapolis, MN 55408. Upon information and belief, Perfekt also operates at 1030 Frontage Rd, Hastings, MN 55033 and 310 Theo Ct, Hastings, MN 55033. Spring Lake Lumber hired Perfekt to perform construction lien management services for it in Minnesota.

15.     Perfekt is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6), who uses an instrumentality of interstate commerce or the mails in a business who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

### *The Tjadens Hired a General Contractor for the Construction of a New Home*

16.     The Tjadens entered a contract to purchase the land from Renovation Concepts LLC, dba Kohaven ("Kohaven") on January 25, 2022, with the agreement it would be the exclusive builder for a new home on the land. The land was purchased from JD Andover Holdings, LLC ("Developer") in February 2022, not from Kohaven directly.

17.     Through a separate Construction Contract (the "Contract") signed on or about July 15, 2022, the Tjadens hired Kohaven to build a single-family home at 16857 Guarani St NW, Andover, Minnesota, 55304 (the "Home" or "Property) for a total price of $909,999.00 (the "Project").

18.     Kohaven, as the general contractor, then subcontracted with Spring Lake Lumber to furnish labor, skill, material, and/or machinery for the Project.

19.     The Tjadens have no contractual relationship with Spring Lake Lumber.

20.     The Tjadens utilized $470,941.99 of their personal funds to pay for the construction (not including closing costs), and they obtained a construction loan from Bremer Bank in the amount $573,000.00, which included $133,942.99 for the purchase of the land while the remaining $439,057.01 went toward the construction of the Home. The Tjadens deposited their $470,941.99 with Bremer Bank, and The Title Group Inc. handled disbursement of the funds to Kohaven.

21.     The structure of the construction loan was a one-time closing. The construction loan was to roll over from a construction loan to a traditional mortgage on August 1, 2023.

22.     On January 26, 2022, the Tjadens made a $5,000 earnest money payment for the purchase of the lot.

23.     On May 4, 2022, the Tjadens made a $10,000 payment to Kohaven for the Architectural Fee before construction began.

24.     Over the course of the Project, the total price for the construction Project increased to $936,567.35 due to changes and upgrades, but some of those cost increases were billed to the Tjadens without their prior consent. For example, the Tjadens received a change order for a septic system and fireplace upgrade in the amount of $10,036.00. While the Tjadens did agree to the fireplace upgrade, Kohaven never discussed the cost of the septic system with the Tjadens before it was installed. In addition, after the parties entered the Contract, Kohaven realized that the Home would need a second HVAC system and therefore passed the expense of $22,700 on to the Tjadens, even though Kohaven knew or should have known about this need and should have built it into the initial build cost. The Tjadens felt they needed to adjust their selections throughout the build to reduce that out-of-pocket cost and were able to reduce that additional cost to $16,532.35.

25.     Kohaven then began construction of the Home in September of 2022. Between August of 2022 and April of 2023, Kohaven made six separate requests

to The Title Group to draw funds from the Tjadens' personal funds and the construction loan from Bremer Bank, which The Title Group honored and disbursed to Kohaven. The requests were as follows: (1) August 11, 2022: $272,999.70; (2) September 22, 2022: $181,999.80; and (3) November 9, 2022: $136,499.85; (4) January 23, 2023: $126,499.85; (5) March 7, 2023: $136,499.85; and (6) April 22, 2023: $40,499.95.

26.    In support of the first five draw requests, Kohaven signed and submitted lien waivers affirming that "all material furnished by [Kohaven] has been paid for."

27.    With these six draws, plus the $5,000 earnest money payment and the $10,000 architectural fee, The Title Group disbursed funds to Kohaven in the amount of the initial Contract price of $909,999.00.

28.    During the construction process, the Tjadens became aware of several construction defects, substandard work, work that did not comply with the Contract's plans and specifications, and materials that were not adequate for the Home.

29.    Although the Home was not fully finished, the Tjadens took possession of the Home on April 27, 2023, after obtaining the Certificate of Occupancy from the city, in reliance on a promise from Kohaven that it would repair the defects and complete construction on the Home.

30.    However, the Tjadens' then learned that Kohaven had not paid all of its subcontractors and suppliers in full for their work and materials on the Project as Kohaven had stated in the signed lien waivers.

31.    As such, several of those subcontractors and suppliers began seeking the debt Kohaven owed them from the Tjadens, and some began filing mechanic's liens against the Tjadens' Home.

32.    In a June 27, 2023 response to an inquiry from the Minnesota Department of Labor and Industry ("DLI"), Kohaven represented that it still owes thirteen subcontractors a total of $195,378.17 for work and materials for the Project.

33.    In this response to DLI, Kohaven also stated, "Kohaven recognizes that it should have retained all funds provided by the Tjadens and used those funds only to pay the labor and materials on the Tjaden project. Unfortunately, Kohaven used some of those funds for other company expenses."

34.    The Tjadens also learned that Kohaven no longer intended on repairing and completing the Home as required by the Contract.

35.    Therefore, the Tjadens were left having to find other contractors to complete Kohaven's defective, substandard, and unfinished work.

### *The Tjadens Obtain a Judgment Against Kohaven for its Fraud*

36.    The Tjadens then hired an attorney to represent them with respect to all issues and disputes related to Kohaven and the Project, including but not limited to Kohaven's fraud and protecting their interests against mechanic's liens on their Home from Kohaven's subcontractors and suppliers.

37.    Kohaven then filed for Chapter 7 Bankruptcy on August 1, 2023.

38.    On September 21, 2023, the United States Bankruptcy Court District of Minnesota granted the Tjadens' motion for relief from the automatic stay so that the Tjadens could commence a lawsuit against Kohaven.

39.    The Tjadens commenced a lawsuit against Kohaven, and on October 20, 2023, the Tjadens obtained a judgment against Kohaven for its fraud and breach of contract in State of Minnesota, Anoka County District Court file number 02-CV-23-5503.

40.    In that action, Kohaven admitted and the court found that the Tjadens paid Kohaven the total Contract Price in full; that in support of its draw requests to receive disbursements from the title company, Kohaven submitted signed fraudulent lien waivers stating that all material furnished on the Project has been paid for, even though Kohaven had not paid all subcontractors and suppliers for work and materials furnished for the Project; and that Kohaven unlawfully used the funds it received for the Project for other company expenses. (*Id.*)

41.    Kohaven breached the Contract with the Tjadens by, among other things, failing to provide legitimate lien waivers with its draw requests, failing to cause the removal of mechanic's liens from the Home, failing to make payments to its subcontractors and suppliers, failing to fulfill its contractual obligations to build the Home in a timely and non-negligent manner, and by declaring bankruptcy. (*Id.*)

### *Several Subcontractors and Suppliers Filed Invalid Mechanic's Liens Against the Tjadens' Home*

42.    Kohaven's fraud and breach has wreaked havoc on the Tjadens' lives, causing them to suffer significant damages and emotional distress.

43.    To add insult to injury, Spring Lake Lumber knew the Tjadens were the victims of a fraudulent contractor, and knew the Tjadens had paid Kohaven in full, but filed a lien against the Tjadens' Home anyway in an attempt to force the Tjadens to pay a second time for work and materials for which they had already paid Kohaven.

44.    On July 18, 2023, Spring Lake Lumber also filed a mechanic's lien against the Tjadens' Home claiming it was still owed $16,701.94 for labor and/or materials it furnished for the Project between December 6, 2022 and March 30, 2023. (the "Debt") Spring Lake Lumber recorded that mechanic's lien on July 18, 2023, with the office of the Anoka County Recorder as document number 2394671.001 (the "Mechanic's Lien").

45.    This was a financial obligation that was primarily for personal, family, or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5). *See e.g. Randall v. Paul*, 897 N.W.2d 842, 845–46 (Minn. Ct. App. 2017), *Kreisler v. Latino Union, Inc.*, 06 CV 3968, 2007 WL 1118408, at *4–5 (N.D. Ill. Apr. 12, 2007).

46.    Other subcontractors and suppliers also filed mechanic's liens against the Tjadens' Home included Advanced Drywall, Inc., Haas Plumbing LLC, Len's Custom Remodeling, Inc, West Air, Incorporated, and Revience Corporation.

47.    However, to date, none of these entities took further action to try to enforce their purported liens or collect on any underlying indebtedness.

48.    The Tjadens suffered emotional distress as a direct result of these liens being filed against their Home. After a fraudulent contractor victimized and wreaked havoc on the Tjadens' lives causing them to suffer various damages, they were then genuinely in fear that that they had to pay the invalid liens or else they may lose their Home through foreclosure. This caused the Tjadens anguish, stress, lack of sleep, irritability, and anxiety.

49.    In order to avoid foreclosure of their Home, the Tjadens were forced to retain counsel to try to protect their interests against these mechanic's liens for which they have incurred substantial legal fees.

50.    On August 10, 2023, the Tjadens sent a letter to every subcontractor and supplier for the Project that they could identify, including Spring Lake Lumber, stating the following:

   a.    "In a response to an inquiry from the Minnesota Department of Labor and Industry, Kohaven represented that it still owes thirteen subcontractors a total of $195,378.17 for work and materials furnished for the Project."

b.      "With this letter, we are providing you with notice that any mechanic's lien filed against the Home for work or materials furnished for the Project would be invalid. . . . The Tjadens, as the owners of the Home, were not provided with any pre-lien notice required by this statute. As more than 45 days has elapsed since your work and/or materials were first furnished for the Project, any attempt to file and enforce a lien is time barred and therefore would be invalid."

c.      "Moreover, you are precluded from filing a lien because the Tjadens paid Kohaven in full in April of 2023 before receiving a pre-lien notice from you. As such, your remedy for any non-payment would be through a claim against Kohaven, not a mechanic's lien against the Home." And,

d.      "Now that you have been provided this information and notice, please be advised that any attempt to file a lien against the Home— and any failure to remove a lien that currently exists—may subject you to liability for a claim for slander of title."

***Spring Lake Lumber and Brutlag Firm Continued Collection Efforts and Filed a Foreclosure Action on the Invalid Lien in an Attempt to Collect a Debt***

51.     After that August 10, 2023 letter, Spring Lake Lumber is the only subcontractor or supplier that has continued attempting to collect a debt and enforce its purported mechanic's lien.

52.    As Spring Lake Lumber had no contractual relationship with the Tjadens, Spring Lake Lumber resorted to Minnesota's mechanic's lien statutes to collect the debt. Minn. Stat. § 514.01, *et. seq*.

53.    However, any claims Spring Lake Lumber may have had to foreclose the Mechanic's Lien and collect the Debt from the Tjadens were time-barred under those statutes because Spring Lake Lumber failed to serve a prelien notice within the statutory limitations period, because the Tjadens paid the general contractor in full before they received Spring Lake Lumber's prelien notice, and because Spring Lake Lumber failed to serve its lien statement notice within the statutory limitations period. *See* Minn. Stat. §§ 514.011, subd. 2; 514.011, subd. 2; 514.08, subd. 1.

54.    Nevertheless, on September 20, 2023, the Tjadens' counsel received an email from Spring Lake Lumber's counsel, Brutlag Firm, attaching the following five documents:

   a.    A copy of the August 10, 2023 letter that the Tjadens sent to Spring Lake Lumber, which provided Spring Lake Lumber notice that its lien is invalid;

   b.    A letter from Brutlag Firm to the Tjadens' counsel that was dated August 29, 2023, but was not received by the Tjadens' counsel until this September 20, 2023 email. It also did not include the notice required by 15 U.S.C. § 1692(g) and a "mini-*Miranda*" advising them that it was a debt collector and that anything they said could be used

in a debt collection action. *See Randall v. Paul*, 897 N.W.2d 842, 845–46 (Minn. Ct. App. 2017) (citing 15 U.S.C. § 1692e(11));

c.     A copy of Spring Lake Lumber's invoice to Kohaven for the labor and/or materials it furnished on the Project;

d.     A copy of a purported pre-lien notice dated December 19, 2022, that Perfekt attempted to mail to the Tjadens on behalf of Spring Lake Lumber, but Perfekt incorrectly addressed to "16**58**7 Guarani St," even though the new Home construction site had the address "16**85**7 Guarani St." (emphasis added); and

e.     A USPS tracking printout showing the above purported pre-lien notice was mailed to that wrong address on December 19, 2022, and returned to the sender as undeliverable.

55.     In Brutlag Firm's letter dated August 29, 2023 (which was not received until September 20, 2023), Brutlag Firm argued in part, "While the pre-lien notice may not have been received by your clients, case law has established that pre-lien notice is effective upon mailing and not receipt."

56.     In addition, that letter stated, "My client has a valid mechanic's lien against your client's property and will pursue further foreclosure of its lien if this matter is not timely resolved."

57.     In both this August 29, 2023 letter and the September 20, 2023 email, Brutlag Firm asked if the Tjadens wanted to make a settlement offer to Spring Lake Lumber to avoid a foreclosure action.

58.     This email and letter were Brutlag Firm's attempts to collect a debt owed to another, Spring Lake Lumber, from the Tjadens. *See Smith v. Stewart, Zlimen & Jungers*, Ltd., 990 F.3d 640, 644 (8th Cir. 2021) ("a debt collector's representations made to third parties, including courts adjudicating consumer credit lawsuits, may support liability under § 1692e. In *Hemmingsen v. Messerli & Kramer, P.A.*, we rejected the categorical rule that "false statements not made directly to a consumer debtor are never actionable under § 1692e." 674 F.3d at 818.) (*citing Hemmingsen v. Messerli & Kramer*, P.A., 674 F.3d 814, 818 (8th Cir. 2012); *Haney v. Portfolio Recovery Associates*, L.L.C., 895 F.3d 974, 989–90 (8th Cir. 2016)).

59.     Perfekt's December 19, 2022 prelien notice sent on behalf of Spring Lake Lumber stated, "[w]e may not file a lien if you paid your contractor in full before receiving this notice."

60.     Perfekt's December 19, 2022 prelien notice was also an attempt to collect a debt owed to another, Spring Lake Lumber, from the Tjadens. *See e.g. Heller v. Graf*, 488 F. Supp. 2d 686, 694–95 (N.D. Ill. 2007).

61.     However, that notice failed to provide the Tjadens with the notice required by 15 U.S.C. § 1692(g) and a "mini-*Miranda*" advising them that it was a debt collector and that anything they said could be used in a debt collection action. *See Randall v. Paul*, 897 N.W.2d 842, 845–46 (Minn. Ct. App. 2017) (citing 15 U.S.C. § 1692e(11)).

62.   Brutlag Firm sent this same communication to the Tjadens' counsel on September 20, 2023.

63.   Perfekt also sent Spring Lake Lumber's July 18, 2023 mechanic's lien statement to the Tjadens. This was also an attempt to collect a debt from the Tjadens.

64.   Perfekt's mechanics lien statement also failed to provide the Tjadens with the notice required by 15 U.S.C. § 1692(g) and a "mini-*Miranda*" warning advising them that it was a debt collector and that anything they said could be used in a debt collection action. *See Randall v. Paul*, 897 N.W.2d 842, 845–46 (Minn. Ct. App. 2017) (citing 15 U.S.C. § 1692e(11)).

65.   On October 13, 2023, the Tjadens' counsel sent an email to Brutlag Firm stating, "My clients still maintain that the lien is invalid and are therefore not interested in making a settlement offer."

66.   Nevertheless, on behalf of Spring Lake Lumber, Brutlag Firm filed a foreclosure action against the Tjadens on October 25, 2023, in the State of Minnesota, Anoka County District Court file number 02-CV-23-5780 (the "Foreclosure Action").

67.   The FDCPA bars a debt collector from filing or threatening a lawsuit to collect a time-barred debt. *Nelson v. Midland Credit Mgmt., Inc.*, 828 F.3d 749, 751 (8th Cir. 2016) (*quoting Freyermuth v. Credit Bureau Servs., Inc.,* 248 F.3d 767, 771 (8th Cir. 2001)).

68.   The FDCPA "applies to the litigating activities of lawyers." *Heintz v.*

*Jenkins*, 514 U.S. 291 at 294 (1995).

69.    Regulation F prohibits a debt collector from suing or threatening to sue to collect a time-barred debt. 12 CFR part 1006.

70.    As the CFPB explained in finalizing this prohibition, "a debt collector who sues or threatens to sue a consumer to collect a time-barred debt explicitly or implicitly misrepresents to the consumer that the debt is legally enforceable, and that misrepresentation is material to consumers because it may affect their conduct with regard to the collection of that debt, including whether to pay it."

71.    Regulation F's prohibition on suits and threats of suit on time-barred debt is subject to a strict liability standard. That is, a debt collector who sues or threatens to sue to collect a time-barred debt violates the prohibition "even if the debt collector neither knew nor should have known that a debt was time barred."

72.    On November 9, 2023, the Tjadens' counsel sent another letter to Brutlag Firm stating, "[w]e have repeatedly put you on notice that this mechanic's lien is invalid, but your client has refused to release it, and you took affirmative action to collect a legally barred debt by serving this lawsuit." Therefore, the letter stated, "the Tjadens now have a claim against Spring Lake Lumber for slander of title and a claim against your firm for violations for the Fair Debt Collection Practices Act ("FDCPA")."

73.    That November 9 letter also alerted Brutlag Firm that Spring Lake Lumber's lien is invalid for the following four primary reasons:

a.   Spring Lake Lumber never served a pre-lien notice on the Tjadens at their correct address within the statutory limitations period, and the Tjadens never received actual notice of the attempt that was mailed to the wrong address;

b.   Even if the prelien notice had been addressed correctly (and it was not), Spring Lake Lumber had no reasonable expectation the Tjadens would be at the construction site to receive the certified mail because the Home build would not be completed for several months after the notice was mailed. Also, Spring Lake Lumber failed to request the Tjadens' actual address at the time from the contractor pursuant to Minn. Stat. § 514.011, subd. 3, and Spring Lake Lumber made no good faith effort to send the prelien notice to the address where the Tjadens were residing in December 2022;

c.   Spring Lake Lumber was barred from filing the lien because the Tjadens paid the contractor, Kohaven, in full before they "received" the prelien notice, pursuant to Minn. Stat. § 514.011, subd. 2; and

d.   The lien is time barred under Minn. Stat. § 514.08, subd. 1, because Spring Lake Lumber also mailed the lien statement to the wrong address. This is reflected in the lien statement itself dated July 17, 2023—while paragraph 2 of the lien statement correctly identifies the address as "16**857** Guarani St NW," Spring Lake Lumber attested

in the same document that it served the lien statement by certified mail to "16**58**7 Guarani St NW".

74.     One purpose of the Minnesota mechanic's lien statutory scheme is to put a homeowner on notice that a subcontractor has not been paid so the homeowner can withhold payment from the general contractor and pay the subcontractor directly.

75.     The Tjadens were never provided this opportunity because Spring Lake Lumber mailed its prelien notice and lien statement to the wrong address, and Kohaven submitted fraudulent lien waivers stating that all materials had been paid for, so the Tjadens did not have actual notice that Kohaven had not fully paid Spring Lake Lumber until well after the Tjadens had paid Kohaven in full.

76.     Spring Lake Lumber knew or should have known that the Mechanic's Lien was invalid when it made no effort to obtain the Tjadens' address from the general contractor in December of 2022 pursuant to Minn. Stat. § 514.011, subd. 3, and instead made an erroneous attempt to mail that notice to the address of the new build where it knew the Tjadens were not residing on that date.

77.     Spring Lake Lumber and Perfect knew or should have known that the Mechanic's Lien was invalid when they addressed the prelien notice to the wrong address on December 19, 2022, and received it back as undeliverable.

78.     Spring Lake Lumber, Brutlag Firm, and Perfekt knew or should have known that the Mechanic's Lien was invalid when it mailed its lien statement to the wrong address on or about July 17, 2023.

79.     Brutlag Firm and Spring Lake Lumber knew or should have known that the Mechanic's Lien was invalid when it reviewed documents stating that the prelien notice and lien statements were mailed to the wrong address and never received by the Tjadens. These documents include the prelien notice, the USPS tracking for the same, and the lien statement.

80.     Spring Lake Lumber and Brutlag Firm knew or should have known that the Mechanic's Lien was invalid when the Tjadens provided them with notice of its invalidity in a letter dated August 10, 2023, which stated that the Tjadens paid the general contractor Kohaven in full before they received Spring Lake Lumber's prelien notice pursuant to Minn. Stat. § 514.011, subd. 2, because they still had not received Spring Lake Lumber's prelien notice on the date of that letter.

81.     Brutlag Firm knew or should have known that the Mechanic's Lien was invalid when the Tjadens' counsel informed Brutlag Firm of that in an email dated October 13, 2023.

82.     Nevertheless, even with all of this notice, Brutlag Firm and Spring Lake Lumber proceeded to file the Foreclosure Action against the Tjadens on October 25, 2023, seeking to collect the Debt on behalf of Spring Lake Lumber from the Tjadens.

83.     The above-described collection conduct by Defendants was done in violation of numerous and multiple provisions of the FDCPA including 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(4),  1692e(5), 1692e(11),  1692f, and 1692f(1), as implemented by Reg. F.

### *The Tjadens Suffered Damages as a Direct Result of Spring Lake Lumber, Brutlag Firm, and Perfekt's Actions and Violations*

84.    Defendants' unlawful collection efforts caused the Tjadens to suffer concrete and particularized harm.

85.    The Tjadens were actually damaged as they have incurred costs and attorneys' fees in excess of $17,500 responding to Defendants' unlawful collection efforts prior to the foreclosure.

86.    Then, after Spring Lake Lumber and Brutlag Firm filed the time-barred Foreclosure Action, the Tjadens were forced to incur even more time, inconvenience, energy, and expense to defend against a lawsuit that defendants had no right to bring in the first place.

87.    Defendants' lawsuit forced the Tjadens to choose to take action to either enforce or forbear a legal right.

88.    In being forced to make this choice, for which the Tjadens had no training, education, or expertise, they chose to retain an attorney.

89.    The Tjadens had to undertake the time and expense to defend an illegal lawsuit, including the attorney fees they incurred to again explain to Spring Lake Lumber and Brutlag Firm why Spring Lake Lumber's lien was invalid and the action was time-barred.

90.    In this regard, Defendants' bringing of a time-barred claim and the injury borne by the Tjadens in defending that time-barred claim is analogous to the common law claim of fraudulent misrepresentation.

91.    That is, by bringing this claim, Defendants fraudulently represented that Spring Lake Lumber had a present right of possession to the Property and a right to demand or compel payment to satisfy the bogus Mechanic's Lien.

92.    Likewise, Defendants' bringing of a time-barred claim and the injury borne by the Tjadens in defending that time-barred claim is analogous to the common law doctrine of abuse of process.

93.    That is, bringing this time-barred claim was an unjustified and unreasonable use of legal proceedings or process to improperly pressure the Tjadens to pay Spring Lake Lumber an amount for which Spring Lake Lumber had no legal right to collect.

94.    Likewise, Defendants' bringing of a time-barred claim and the injury borne by the Tjadens in defending that time-barred claim is analogous to the common law doctrine of intentional infliction of emotional distress.

95.    That is, Defendants knew the Tjadens had been victimized by the general contractor, and Defendants knew bringing the time-barred claim would cause the Tjadens further emotional distress, but Defendants did so anyway for the improper purpose of pressuring the Tjadens to pay Spring Lake Lumber an amount for which Spring Lake Lumber had no legal right.

96.    Likewise, Defendants' bringing of a time-barred claim and the injury borne by the Tjadens in defending that time-barred claim is analogous to the common law doctrine of invasion of privacy or intrusion upon seclusion.

97.     Defendants repeatedly sent the Tjadens unwanted communications attempting to collect the debt, file and record the Mechanic's Lien, and proceed with the Foreclosure Action, even though Defendants knew that they had no legal right to do what they were attempting to do.

98.     Indeed, because this action came right after the Tjadens were victimized and defrauded by the general contractor Kohaven wreaking havoc on their lives, this matter brought them additional anguish, stress, lack of sleep, irritability, and anxiety.

99.     The Tjadens faced increased risk of harm if they did not defend the time-barred collection action—they risked losing their Home through foreclosure that would result in loss of control over their family budget, and increased stress, anxiety, and distress from responding to defendants' collection action and the impact it had on their family relationships and the potential risk of becoming homeless.

100.   The Tjadens suffered emotional distress as a direct result of Defendants' attempts to collect the purported Debt and foreclose on their Home.

101.   It was only after the Tjadens suffered these damages and incurred additional attorney fees in responding to the time-barred Foreclosure Action, that Spring Lake Lumber and Brutlag Firm dismissed that lawsuit without prejudice on November 15, 2023.

## TRIAL BY JURY

102.    The Tjadens request a trial by jury on all issues so triable.  U.S. Const. amend. 7.  Fed. R. Civ. P. 38.

## CLASS ALLEGATIONS

103.    Plaintiff brings this claim on behalf of the following case, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

104.    The First class consists of:

   a.    All consumers in the State of Minnesota;

   b.    To whom Perfekt sent a pre-lien notice;

   c.    Attempting to collect a consumer debt;

   d.    Which failed to include the notice required by 15 U.S.C. § 1692(g), a "mini-*Miranda*" advising them that it was a debt collector and that anything they said could be used in a debt collection action as required by 15 U.S.C. § 1692e(11)), or all necessary notices required under 12 CFR 1006.34; and

   e.    Which letter was sent on or after a date one (1) year prior to the filing of the action.

105.    The Second class consists of:

   a.    All consumers in the State of Minnesota;

   b.    To whom Perfekt sent a lien statement;

   c.    Attempting to collect a consumer debt;

d. Which failed to include the notice required by 15 U.S.C. § 1692(g), a "mini-*Miranda*" advising them that it was a debt collector and that anything they said could be used in a debt collection action as required by 15 U.S.C. § 1692e(11)), or all necessary notices required under 12 CFR 1006.34; and

e. Which letter was sent on or after a date one (1) year prior to the filing of the action.

106. The Third class consists of:

a. All consumers in the State of Minnesota;

b. To whom Brutlag Firm sent correspondence;

c. Attempting to collect a consumer debt;

d. Which failed to include the notice required by 15 U.S.C. § 1692(g), a "mini-*Miranda*" advising them that it was a debt collector and that anything they said could be used in a debt collection action as required by 15 U.S.C. § 1692e(11)), or all necessary notices required under 12 CFR 1006.34; and

e. Which letter was sent on or after a date one (1) year prior to the filing of the action.

107. There are questions of law and fact common to the Plaintiff Class, which common issues predominate over any issues involving only individual class members.

108.   The principal issue in the First class and Second class is whether Defendant Perfekt's written communication to consumers violates 15 U.S.C. §§ 1692e, and 1692g.

109.   The principal issue in the Third class is whether Defendant Brutlag Firm's written communication to consumers violates 15 U.S.C. §§ 1692e, and 1692g.

110.   For each class the identities of all class members are readily ascertainable from the records of defendants and those companies and entities on whose behalf they attempt to collect debts.

111.   Excluded from the Plaintiff Classes are the Defendants and all officers, members, partners, managers, directors and employees of the Defendants and their respective immediate families.

112.   Plaintiff's claims are typical of the class members for each class, as all are based upon the same facts and legal theories.

113.   Plaintiff will fairly and adequately protect the interests of the Plaintiff Classes as defined in this complaint.

114.   Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither Plaintiff nor her attorneys have any interests, which might cause them not to vigorously pursue this action.

115.   The classes are so numerous that joinder of all members is impracticable.

116.   Certification of each class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to

members of the Plaintiff Classes predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

117.    Certification of each class pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate. Defendants have acted in a uniform manner toward the class thereby making injunctive and declaratory relief appropriate to cease further and future illegal conduct.

118.    Plaintiff requests the Court to certify a hybrid class or classes combining the elements of Rule 23(b)(3) for monetary damages and Rule 23(b)(2) for equitable relief.

## CAUSES OF ACTION

### COUNT I
### Violation of the Fair Debt Collection Practices Act
### 15 U.S.C. § 1692 *et seq.*
### (Brutlag, Trucke & Doherty, P.A. and Perfekt, Inc.)

119.    The Tjadens incorporate by reference all the foregoing paragraphs.

120.    The Tjadens only had a contract with the general contractor Kohaven.

121.    The Tjadens had no contractual relationship with Spring Lake Lumber, Brutlag Firm, or Perfekt.

122.    The Tjadens are "consumers" as that term is defined by 15 U.S.C. § 1692a(3).

123.   The alleged Debt is consumer debt within the meaning of 15 U.S.C. § 1692a because it relates to an alleged security interest in the Tjaden's personal home and primary residence.

124.   Spring Lake Lumber hired Brutlag Firm and Perfect to collect the Debt and commence a foreclosure proceeding on behalf of Spring Lake Lumber.

125.   Brutlag Firm is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6), using an instrumentality of interstate commerce or the mails in a business who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

126.   Perfekt is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6), who uses an instrumentality of interstate commerce or the mails in a business who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

127.   As explained more thoroughly above, the Spring Lake Lumber's Mechanic's Lien was invalid for the following four primary reasons:

  a.   Spring Lake Lumber never served a pre-lien notice on the Tjadens at their correct address within the statutory limitations period, and the Tjadens never received actual notice of the attempt that was mailed to the wrong address;

  b.   Even if the prelien notice had been addressed correctly (and it was not), Spring Lake Lumber had no reasonable expectation the Tjadens would be at the construction site to receive the certified mail

because the Home build would not be completed for several months after the notice was mailed. Also, Spring Lake Lumber failed to request the Tjadens' actual address at the time from the contractor pursuant to Minn. Stat. § 514.011, subd. 3, and Spring Lake Lumber made no good faith effort to send the prelien notice to the address where the Tjadens were residing in December 2022;

c.    Spring Lake Lumber was barred from filing the lien because the Tjadens paid the contractor, Kohaven, in full before they "received" the prelien notice, pursuant to Minn. Stat. § 514.011, subd. 2; and

d.    The lien is time barred under Minn. Stat. § 514.08, subd. 1, because Spring Lake Lumber also mailed the lien statement to the wrong address. This is reflected in the lien statement itself dated July 17, 2023—while paragraph 2 of the lien statement correctly identifies the address as "16**85**7 Guarani St NW," Spring Lake Lumber attested in the same document that it served the lien statement by certified mail to "16**58**7 Guarani St NW".

128.    As a result, any related debt obligation arising from the Mechanic's Lien fails as a matter of law.

129.    Therefore, Spring Lake Lumber does not have a present right of possession to the Property or a right to demand or compel payment to satisfy the Mechanic's Lien.

130.   Nevertheless, Brutlag Firm and Perfekt made repeated attempts to collect on the invalid and time-barred Debt that the Tjadens allegedly owed to another—Spring Lake Lumber.

131.   Brutlag Firm and Perfekt made attempts to collect the Debt through their correspondence, filing of the Mechanic's Lien, and commencing a lawsuit to foreclose that lien.

132.   For example, in both this August 29, 2023 letter and the September 20, 2023 email, Brutlag Firm asked if the Tjadens wanted to make a settlement offer to Spring Lake Lumber to avoid a foreclosure action. This email and letter were Brutlag Firm's attempts to collect a debt owed to another, Spring Lake Lumber, from the Tjadens. *See Smith v. Stewart, Zlimen & Jungers*, Ltd., 990 F.3d 640, 644 (8th Cir. 2021) ("a debt collector's representations made to third parties, including courts adjudicating consumer credit lawsuits, may support liability under § 1692e. In *Hemmingsen v. Messerli & Kramer, P.A.*, we rejected the categorical rule that "false statements not made directly to a consumer debtor are never actionable under § 1692e." 674 F.3d at 818.) (*citing Hemmingsen v. Messerli & Kramer*, P.A., 674 F.3d 814, 818 (8th Cir. 2012); *Haney v. Portfolio Recovery Associates*, L.L.C., 895 F.3d 974, 989–90 (8th Cir. 2016)).

133.   Perfekt's December 19, 2022 prelien notice, subsequently sent to the Tjadens, was also an attempt to collect a debt owed to another, Spring Lake Lumber, from the Tjadens. However, that notice failed to provide the Tjadens with a "mini-*Miranda*" warning advising them that it was a debt collector and

that anything they said could be used in a debt collection action. *See Randall v. Paul*, 897 N.W.2d 842, 845–46 (Minn. Ct. App. 2017) (citing 15 U.S.C. § 1692e(11)).

134.   Perfekt's mailing of Spring Lake Lumber's July 18, 2023 mechanic's lien statement was also an attempt to collect a debt from the Tjadens. However, that letter and lien statement also failed to provide the Tjadens with a "mini-*Miranda*" warning advising them that it was a debt collector and that anything they said could be used in a debt collection action. *See Randall v. Paul*, 897 N.W.2d 842, 845–46 (Minn. Ct. App. 2017) (citing 15 U.S.C. § 1692e(11)).

135.   On behalf of Spring Lake Lumber, Brutlag Firm filed the Foreclosure Action against the Tjadens on October 25, 2023, in the State of Minnesota, Anoka County District Court file number 02-CV-23-5780.

136.   The FDCPA bars a debt collector from filing or threatening a lawsuit to collect a time-barred debt. *Nelson v. Midland Credit Mgmt., Inc.*, 828 F.3d 749, 751 (8th Cir. 2016) (*quoting Freyermuth v. Credit Bureau Servs., Inc.,* 248 F.3d 767, 771 (8th Cir. 2001)).

137.   The FDCPA "applies to the litigating activities of lawyers." *Heintz v. Jenkins*, 514 U.S. 291 at 294 (1995).

138.   Regulation F prohibits a debt collector from suing or threatening to sue to collect a time-barred debt. 12 CFR part 1006.

139.   As the CFPB explained in finalizing this prohibition, "a debt collector who sues or threatens to sue a consumer to collect a time-barred debt explicitly or

implicitly misrepresents to the consumer that the debt is legally enforceable, and

that misrepresentation is material to consumers because it may affect their

conduct with regard to the collection of that debt, including whether to pay it."

140.    Regulation F's prohibition on suits and threats of suit on time-barred debt

is subject to a strict liability standard. That is, a debt collector who sues or

threatens to sue to collect a time-barred debt violates the prohibition "even if the

debt collector neither knew nor should have known that a debt was time barred."

141.    The above-described collection conduct by Defendants was done in

violation of numerous and multiple provisions of the FDCPA including 15 U.S.C.

§§ 1692d, 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(11),  1692f, and 1692f(1), as

implemented by Reg. F.

142.    It violated § 1692d because the natural consequence of attempting to

collect the Debt to which Spring Lake Lumber had no legal right and filing the

time-barred claim in the Foreclosure Action was to harass, oppress, or abuse the

Tjadens in connection with the collection of a debt.

143.    It violated §§ 1692e and 1692e(2) because Brutlag Firm and Perfekt used

false, deceptive, and misleading representations in connection with the collection

of any debt, including the false representation of the legal status of the Debt. That

is, the false representation that Spring Lake Lumber had a present right of

possession to the Property and a right to demand or compel payment to satisfy

the Mechanic's Lien.

144.    It violated § 1692e(4) because Brutlag Firm threatened that the non-payment of the Debt would result in the seizure, attachment, or sale of the Property.

145.    It violated § 1692e(5) because Brutlag Firm threatened to take any action that cannot legally be taken—i.e., the Foreclosure Action.

146.    It violated § 1692e(11) because the prelien notice and lien statement that Perfekt and/or Brutlag Firm sent to the Tjadens failed to disclose that they were debt collectors attempting to collect a debt and that any information obtained will be used for that purpose. *See Randall v. Paul*, 897 N.W.2d 842, 845–46 (Minn. Ct. App. 2017).

147.    It violated § 1692f and 1692f(1) because Brutlag Firm and Perfekt used unfair or unconscionable means to collect or attempt to collect the Debt, including the collection of any amount that is not expressly authorized by the agreement or permitted by law.

148.    As a result of Brutlag Firm and Perfekt's violations of the FDCPA, the Tjadens are entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Brutlag Firm and Perfekt, and hereby demand the same.

**COUNT II**
**Violation of the Minnesota Uniform Deceptive Trade Practices Act,**
**Minn. Stat. § 325D.43, *et. seq.***
**(Brutlag, Trucke & Doherty, P.A., Spring Lake Park Lumber Co., and**
**Perfekt, Inc.)**

149.    The Tjadens incorporate by reference all the foregoing paragraphs.

150.    Defendants intentionally violated the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et. seq.*

151.    Defendants engaged in unfair or unconscionable acts or practices in violation of Minn. Stat. § 325D.44, Subd. 1(13).

152.    Defendants engaged in conduct which created a likelihood of confusion or misunderstanding in violation of Minn. Stat. § 325D.44, Subd. 1(14).

153.    Defendants' unfair or unconscionable conduct that created a likelihood of confusion or misunderstanding includes, but is not limited to the following:

   a.    Spring Lake Lumber and Perfekt never served a pre-lien notice on the Tjadens at their correct address within the statutory limitations period, and the Tjadens never received actual notice of the attempt that was mailed to the wrong address;

   b.    Even if the prelien notice had been addressed correctly (and it was not), Spring Lake Lumber had no reasonable expectation the Tjadens would be at the construction site to receive the certified mail because the Home build would not be completed for several months after the notice was mailed. And Spring Lake Lumber failed to request the Tjadens' actual address at the time from the contractor

pursuant to Minn. Stat. § 514.011, subd. 3, and Spring Lake Lumber made no good faith effort to send the prelien notice to the address where the Tjadens were residing in December 2022;

c.   Spring Lake Lumber was barred from filing the lien because the Tjadens paid the contractor, Kohaven, in full before they "received" the prelien notice, pursuant to Minn. Stat. § 514.011, subd. 2, and Spring Lake Lumber and Perfekt's prelien notice explicitly stated that they "may not file a lien if you paid your contractor in full before receiving this notice";

d.   Spring Lake Lumber was barred from filing the lien under Minn. Stat. § 514.08, subd. 1, because Spring Lake Lumber also mailed the lien statement to the wrong address, so the Tjadens were never served with it;

e.   Despite the fact that the lien was time-barred and invalid, Spring Lake Lumber and Brutlag Firm continued their collection efforts demanding that the Tjadens pay an invalid Debt; and

f.   When the Tjadens refused to pay the invalid Debt, Spring Lake Lumber and Brutlag Firm filed a lawsuit against the Tjadens seeking to recover the invalid Debt through foreclosure of the Tjadens' Home.

154.   As a result of Defendants' violations of Minn. Stat. § 325D.44, the Tjadens have suffered actual damages, including without limitation out-of-pocket

expenses, emotional distress, costs and disbursements, costs of an investigation, and reasonable attorney fees, in an amount to be determined at trial.

155.   Specifically, the Tjadens were injured because Defendants' collection efforts came right after the Tjadens were victimized and defrauded by the general contractor Kohaven wreaking havoc on their lives, so Defendants' collection efforts, Mechanic's Lien, and foreclosure lawsuit brought them additional anguish, stress, lack of sleep, irritability, and anxiety.

156.   The Tjadens suffered emotional distress as a direct result of Defendants' collection efforts, Mechanic's Lien, and foreclosure lawsuit because the Tjadens genuinely feared that they had to pay the invalid Debt or else they may lose their Home through foreclosure. This caused the Tjadens anguish, stress, lack of sleep, irritability, and anxiety.

157.   The Tjadens were actually damaged as they have incurred costs and attorneys' fees responding to Defendants' collection efforts.

158.   In addition, after Spring Lake Lumber and Brutlag Firm filed the time-barred Foreclosure Action, the Tjadens were forced to incur even more time, inconvenience, energy, and expense to defend against a lawsuit that defendants had no right to bring in the first place.

159.   The Tjadens are therefore entitled to these damages from Spring Lake Lumber, Brutlag Firm, and Perfekt, and hereby demand the same.

160.   Under the Minnesota Uniform Deceptive Trade Practices Act, "[t]he court may award attorneys' fees to the prevailing party if . . . the party charged with a

deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive." Minn. Stat. § 325D.45, subd. 2.

161.   Defendants have engaged in all of the above conduct willfully and knowing that it was deceptive.

162.   Additionally, a consumer injured by a violation of Minn. Stat. § 325D.43, *et. seq*. may also bring an action under Minn. Stat. § 8.31. for "damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court." Furthermore, private right of action by a consumer under this chapter is in the public interest.

163.   As a result of Defendants' violations, the Tjadens are entitled to injunctive and declaratory relief, as well as recovery of the Tjadens' damages, costs, and reasonable attorney fees.

### COUNT III
### Violation of the Minnesota Consumer Fraud Act
### Minn. Stat. § 325F.68, *et. seq*.
### (Brutlag, Trucke & Doherty, P.A., Spring Lake Park Lumber Co., and Perfekt, Inc.)

164.   The Tjadens incorporate by reference all the foregoing paragraphs.

165.   Minnesota's Consumer Fraud Act (CFA) prohibits "[t]he act, use, or employment by any person of any fraud, unfair or unconscionable practice, false pretense . . . misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or

damaged thereby" in violation of Minnesota's Consumer Fraud Act (CFA), Minn. Stat. § 325F.68, Minn. Stat. § 325F.69 (2023).

166.    The CFA defines "merchandise" to include "any objects, wares, goods, commodities, intangibles, real estate, loans, or services," which include the goods and services Spring Lake Lumber furnished to the construction Project. Minn. Stat. § 325F.68, Subd. 2.

167.    Defendants attempts to collect the Debt from the Tjadens—including sending correspondence demanding payment of the Debt, filing the Mechanic's Lien, and filing an action to foreclose on that Lien—were done in connection with the sale of merchandise because the purported Debt was for the construction services and materials Spring Lake Lumber furnished on the Tjadens residential home construction Project. Consumer protection statutes are liberally construed in favor of protecting consumers. *See e.g. State by Humphrey v. Phillip Morris, Inc.* 551 N.W. 2d. 490, 496 (Minn. 2004); *Weigand v. Walser Auto Groups, Inc.,* 683 N.W.2d 807, 812 (Minn. 2004).

168.    Under the CFA, "an unfair method of competition or an unfair or unconscionable act or practice is any method of competition, act, or practice that: (1) offends public policy as established by the statutes, rules, or common law of Minnesota; (2) is unethical, oppressive, or unscrupulous; or (3) is substantially injurious to consumers." Minn. Stat. § 325F.69, subd. 8 (2023).

169.    By attempting to collect a time-barred, invalid Debt that the Tjadens did not owe, and threatening to take the Tjaden's Home in the process, the

Defendants' conduct constituted unfair, unconscionable, and deceptive practices in connection with the sale of any merchandise that was unethical, oppressive, unscrupulous, and substantially injurious to consumers in violation of the CFA.

170.   Defendants' representations that Spring Lake Lumber had a legal right to collect the invalid Debt constituted fraud, false pretense, misrepresentation, a misleading statement, and an unfair, unconscionable, and deceptive practice in violation of the CFA.

171.   Minn. Stat. § 325F.70, subd. 3 (2023) provides the following: "In addition to the remedies otherwise provided by law, a consumer injured by a violation of sections 325F.68 to 325F.70 . . . may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney fees, and receive other equitable relief as determined by the court."

172.   Additionally, a consumer injured by a violation of Minn. Stat. §§ 325F.68 - 325F.70 may also bring an action under Minn. Stat. § 8.31.  A private right of action by a consumer under this chapter is in the public interest.

52.   As a result of Defendants' violations, the Tjadens have suffered actual damages, including without limitation out-of-pocket expenses, emotional distress, costs and disbursements, costs of an investigation, and reasonable attorney fees, in an amount to be determined at trial.

173.   The Tjadens were injured because Defendants' collection efforts came right after the Tjadens were victimized and defrauded by the general contractor

Kohaven wreaking havoc on their lives, so Defendants' collection efforts, Mechanic's Lien, and foreclosure lawsuit brought them additional anguish, stress, lack of sleep, irritability, and anxiety.

174.    The Tjadens suffered emotional distress as a direct result of Defendants' collection efforts, Mechanic's Lien, and foreclosure lawsuit because the Tjadens feared that they had to pay the invalid Debt or else they may lose their Home through foreclosure. This caused the Tjadens anguish, stress, lack of sleep, irritability, and anxiety.

175.    The Tjadens were actually damaged as they have incurred costs and attorneys' fees responding to Defendants' unlawful collection efforts.

176.    In addition, after Spring Lake Lumber and Brutlag Firm filed the time-barred Foreclosure Action, the Tjadens were forced to incur even more time, inconvenience, energy, and expense to defend against a lawsuit that defendants had no right to bring in the first place.

177.    The Tjadens are therefore entitled to these damages from Spring Lake Lumber, Brutlag Firm, and Perfekt, hereby demand the same.

**COUNT IV**
**Malicious Prosecution**
**(Brutlag, Trucke & Doherty, P.A., Spring Lake Park Lumber Co., and Perfekt, Inc.)**

178.    The Tjadens incorporate by reference all the foregoing paragraphs.

179.    The Minnesota Court of Appeals has held that, malicious prosecution requires a showing that:

> (1) the action was brought without probable cause or reasonable belief that the plaintiff would ultimately prevail on the merits; (2) the action must be instituted and prosecuted with malicious intent; and (3) the action must terminate in favor of [claimant]

*Kellar v. VonHoltum,* 568 N.W.2d 186, 192 (Minn. Ct. App. 1997), *review denied* (Minn. Oct. 31, 1997).

180.    "Probable cause for pursuing a civil action consists of such facts and circumstances as will warrant a cautious, reasonable and prudent person in the honest belief that his action and the means taken in prosecution of it are just, legal and proper." *First Nat'l Bank of Omaha v. Marquette Nat'l Bank*, 482 F. Supp. 514, 522–23 (D. Minn. 1979), aff'd, 636 F.2d 195 (8th Cir. 1980), cert. denied, 450 U.S. 1042 (1981).

181.    Defendants lacked the requisite probable cause or reasonable belief that they could prevail on the merits of their civil suit, because Spring Lake Lumber never served a pre-lien notice on the Tjadens at their correct address within the statutory limitations period.

182.    Defendants lacked the requisite probable cause or reasonable belief that they could prevail on the merits of their civil suit, because, even if the prelien notice had been addressed correctly (and it was not), Spring Lake Lumber had no reasonable expectation the Tjadens would be at the construction site to receive the certified mail because the Home build would not be completed for several months after the notice was mailed. Also, Spring Lake Lumber failed to request the Tjadens' actual address at the time from the contractor pursuant to Minn. Stat. § 514.011, subd. 3, and Spring Lake Lumber made no good faith effort to

send the prelien notice to the address where the Tjadens were residing in December 2022.

183.  Defendants lacked the requisite probable cause or reasonable belief that they could prevail on the merits of their civil suit, because Spring Lake Lumber was barred from filing the lien because the Tjadens paid the contractor, Kohaven, in full before they "received" the prelien notice, pursuant to Minn. Stat. § 514.011, subd. 2.

184.  Defendants lacked the requisite probable cause or reasonable belief that they could prevail on the merits of their civil suit, because the lien was time barred under Minn. Stat. § 514.08, subd. 1, because Spring Lake Lumber also mailed the lien statement to the wrong address.

185.  Defendants instituted the civil suit with malicious intent as evidenced by the fact that they were on notice of the forgoing and proceeded with suit solely for the purpose of attempting to leverage the erroneous threat that the Tjadens would lose their home to foreclosure in order to seek amounts that had already been paid by the Tjadens.

186.  The Tjadens were damaged by Defendants' conduct as they were forced to incur even more time, inconvenience, energy, and expense to defend against a lawsuit that defendants had no right to bring in the first place.

187.  Accordingly, the Tjadens are entitled to judgment on their claim for malicious prosecution.

## COUNT V
## Fraud/Intentional Misrepresentation
## (Brutlag, Trucke & Doherty, P.A., Spring Lake Park Lumber Co., and Perfekt, Inc.)

188.   The Tjadens incorporate by reference all the foregoing paragraphs.

189.   Under Minnesota law, to state a claim of fraud there must have been: (1) a false representation of a past or present material fact susceptible of knowledge; (2) knowledge by the person making the false representation that it is false or ignorance of the truth of the assertion; (3) an intention to induce the claimant to act or to justify the claimant to act; (4) the claimant must have been induced to act or justified in acting in reliance on the representation; and (5) the claimant must suffer damage proximately caused by the misrepresentation.

190.   Spring Lake Lumber, Brutlag Firm, and Perfekt made false representations of material facts, including but not limited to the representations that the Debt was valid and legally enforceable, that the Tjadens owed the Debt to Spring Lake Lumber, and that the Tjadens' Home would be foreclosed if they did not pay the Debt.

191.   These representations were false, misleading, and misrepresentations.

192.   Spring Lake Lumber, Brutlag Firm, and Perfekt made such representations to the Tjadens knowing them to be false or with reckless disregard for the truth.

193.   These representations were material.

194.   Spring Lake Lumber, Brutlag Firm, and Perfekt intended the representations to induce the Tjadens to pay the Debt that Kohaven owed to Spring Lake Lumber.

195.   These representations did induce the Tjadens to hire counsel to investigate and defend against these representations because the Tjadens genuinely feared that they had to pay the Debt or else they may lose their Home through foreclosure.

196.   Spring Lake Lumber, Brutlag Firm, and Perfekt's actions constitute common-law fraud and intentional misrepresentation.

197.   As a direct result of Spring Lake Lumber, Brutlag Firm, and Perfekt's fraud and misrepresentations, the Tjadens have suffered damages, including without limitation actual damages, special damages, costs, attorney fees, and other appropriate relief under Minnesota law in an amount to be proven at trial.

198.   Specifically, the Tjadens were injured because Defendants' collection efforts came right after the Tjadens were victimized and defrauded by the general contractor Kohaven wreaking havoc on their lives, so Defendants' collection efforts, Mechanic's Lien, and foreclosure lawsuit brought them additional anguish, stress, lack of sleep, irritability, and anxiety.

199.   The Tjadens suffered emotional distress as a direct result of Defendants' collection efforts, Mechanic's Lien, and foreclosure lawsuit because the Tjadens genuinely feared that they had to pay the invalid Debt or else they may lose their

Home through foreclosure. This caused the Tjadens anguish, stress, lack of sleep, irritability, and anxiety.

200.   The Tjadens were actually damaged as they have incurred costs and attorneys' fees responding to Defendants' collection efforts.

201.   In addition, after Spring Lake Lumber and Brutlag Firm filed the time-barred Foreclosure Action, the Tjadens were forced to incur even more time, inconvenience, energy, and expense to defend against a lawsuit that defendants had not right to bring in the first place.

202.   The Tjadens are therefore entitled to these damages from Spring Lake Lumber, Brutlag Firm, and Perfekt, hereby demand the same.

## COUNT VI
## Negligent Misrepresentation
### (Brutlag, Trucke & Doherty, P.A., Spring Lake Park Lumber Co., and Perfekt, Inc.)

203.   The Tjadens incorporate by reference all the foregoing paragraphs.

204.   A person who: (1) through his or her profession, business, or employment, or in any transaction in which he or she has a pecuniary interest; (2) fails to exercise reasonable care or competence in obtaining or communicating information; and (3) thereby supplies false information while guiding others in their transactions; is (4) liable for any pecuniary loss caused by claimant's justifiable reliance.

205.   Spring Lake Lumber had pecuniary interest in the Debt because Kohaven incurred that Debt through Spring Lake Lumber's professional business services.

206.   Brutlag Firm and Perfekt also had pecuniary interests because Spring Lake Lumber hired both of them as agents to assist in collecting the Debt on behalf of Spring Lake Lumber for which Brutlag Firm and Perfekt were paid.

207.   As described above, Spring Lake Lumber, Brutlag Firm, and Perfekt failed to exercise reasonable care or competence in communicating the following representations to the Tjadens: that the Debt was valid and legally enforceable, that the Tjadens owed the Debt to Spring Lake Lumber, and that the Tjadens' Home would be foreclosed if they did not pay the Debt.

208.   These representations discussed above were false, misleading, and misrepresentations.

209.   The Tjadens justifiably relied on this false information as they genuinely feared that they had to pay the Debt or else they may lose their Home through foreclosure, causing them to hire counsel to investigate and defend.

210.   As a direct result of Spring Lake Lumber, Brutlag Firm, and Perfekt's negligent misrepresentations discussed above, the Tjadens have suffered damages, including without limitation actual damages, special damages, costs, attorney fees, and other appropriate relief under Minnesota law in an amount to be proven at trial.

211.   Specifically, the Tjadens were injured because Defendants' collection efforts came right after the Tjadens were victimized and defrauded by the general contractor Kohaven wreaking havoc on their lives, so Defendants' collection

efforts, Mechanic's Lien, and foreclosure lawsuit brought them additional anguish, stress, lack of sleep, irritability, and anxiety.

212.    The Tjadens suffered emotional distress as a direct result of Defendants' collection efforts, Mechanic's Lien, and foreclosure lawsuit because the Tjadens genuinely feared that they had to pay the invalid Debt or else they may lose their Home through foreclosure. This caused the Tjadens anguish, stress, lack of sleep, irritability, and anxiety.

213.    The Tjadens were actually damaged as they have incurred costs and attorneys' fees responding to Defendants' collection efforts.

214.    In addition, after Spring Lake Lumber and Brutlag Firm filed the time-barred Foreclosure Action, the Tjadens were forced to incur even more time, inconvenience, energy, and expense to defend against a lawsuit that defendants had not right to bring in the first place.

215.    The Tjadens are therefore entitled to these damages from Spring Lake Lumber, Brutlag Firm, and Perfekt, hereby demand the same.

**COUNT VII**
**Slander of Title**
**(Brutlag, Trucke & Doherty, P.A., Spring Lake Park Lumber Co., and Perfekt, Inc.)**

216.    The Tjadens incorporate the above paragraphs by reference.

217.    Spring Lake Lumber, Brutlag Firm, and Perfekt made false statements concerning the Property in which the Tjadens have an ownership interest. Specifically:

a.    That Spring Lake Lumber had an interest in the Property via the invalid Mechanic's Lien; and

b.    That Spring Lake Lumber had the right to file and record the Mechanic's Lien and foreclose on the Property.

218.   These false statements were published to others.  Specifically, Spring Lake Lumber, Brutlag Firm, and Perfekt recorded the Mechanic's Lien on July 18, 2023, with the office of the Anoka County Recorder as document number 2394671.001.

219.   Spring Lake Lumber and Brutlag Firm also falsely represented to the Tjadens' attorney and the Court that Spring Lake Lumber had an interest in the Property and that it had a right to repayment of the Debt based on the invalid Mechanic's Lien both in correspondence and in the Foreclosure Action.

220.   These false statements were published maliciously.  Specifically, Spring Lake Lumber, Brutlag Firm, and Perfekt caused the Mechanic's Lien to be recorded even though they knew, or should have known, that the Mechanic's Lien was invalid and Spring Lake Lumber did not have a legal or factual basis for asserting a security interest in the Property, for the following reasons:

a.    Spring Lake Lumber knew or should have known that the Mechanic's Lien was invalid when it made no effort to obtain the Tjadens' address from the general contractor in December of 2022 pursuant to Minn. Stat. § 514.011, subd. 3, and instead made an

erroneous attempt to mail that notice to the address of the new build where it knew the Tjadens were not residing on that date.

b.      Spring Lake Lumber and Perfect knew or should have known that the Mechanic's Lien was invalid when they addressed the prelien notice to the wrong address on December 19, 2022, and received it back as undeliverable.

c.      Spring Lake Lumber, Brutlag Firm, and Perfekt knew or should have known that the Mechanic's Lien was invalid when it mailed its lien statement to the wrong address on or about July 17, 2023.

d.      Brutlag Firm and Spring Lake Lumber knew or should have known that the Mechanic's Lien was invalid when it reviewed documents stating that the prelien notice and lien statements were mailed to the wrong address and never received by the Tjadens. These documents include the prelien notice, the USPS tracking for the same, and the lien statement.

e.      Spring Lake Lumber and Brutlag Firm knew or should have known that Spring Lake Lumber's lien was invalid when the Tjadens provided them with notice of its invalidity in a letter dated August 10, 2023, which stated that the Tjadens paid the general contractor Kohaven in full before they received Spring Lake Lumber's prelien notice pursuant to Minn. Stat. § 514.011, subd. 2, because they still

had not received Spring Lake Lumber's prelien notice on the date of that letter.

    f.    Brutlag Firm knew or should have known that the Mechanic's Lien was invalid when the Tjadens' counsel informed Brutlag Firm of that in an email dated October 13, 2023.

221.   Nevertheless, even with all of this notice, Brutlag Firm and Spring Lake Lumber proceeded to file the Foreclosure Action against the Tjadens on October 25, 2023—publishing the false statements to the court and seeking to collect the Debt from the Tjadens.

222.   The Tjadens are entitled to their attorney fees and costs as special damages. Attorney fees and costs reasonably necessary in an action to clear clouds on title resulting from slander of title are "special damages" that are recoverable in a slander of title action. *Laymon v. Minnesota Premier Properties, LLC*, 903 N.W.2d 6, 18 (Minn. Ct. App. 2017).

223.   The publication of the false statements concerning the Property caused the Tjadens pecuniary loss in the form of special damages.  Specifically, the Tjadens incurred costs and liabilities associated with trying to remove the Mechanic's Lien from their Property and defending against the Foreclosure Action, which included costs, disbursements, and attorney fees. In addition, the Tjadens have has incurred costs and liabilities associated with this action, such as attorney fees, filing fees, service of process fees, and legal fees.

224.   As a result of Spring Lake Lumber and Brutlag Firm's slander of title, the Tjadens are entitled to special damages, including attorney fees and costs, and such and further relief as the Court deems appropriate, and the Tjadens hereby demand the same in an amount to be determined at trial.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs James and Amanda Tjaden ask this Court to enter Judgment against Defendants as follows:

a.   Certification of this action as a class action on behalf of the putative classes;

  i.   Designation of Plaintiff as Class Representative;

  ii.   Appointment of the Consumer Justice Center P.A. and Christensen Sampsel PLLC as class counsel;

  iii.   Leave to amend to add a claim for punitive damages;

  iv.   Judgment in favor of Plaintiffs on all counts;·

  v.   Declaration that the practices complained of herein are unlawful

b.   An award for the Tjadens' actual, special, and consequential damages for Defendants' violations of the Minnesota Uniform Deceptive Trade Practices Act and Consumer Fraud Act, and for Defendants' Malicious Prosecution, Fraud/Intentional Misrepresentation, Negligent Misrepresentation, and Slander of Title, including Plaintiffs' costs,

disbursements, and attorney fees pursuant to Minn. Stat. §§ 325D.43, et. seq., 325F.68 - 325F.70, 8.31 and as allowed by other law;

c.      An award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1), an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A), and an award of costs, disbursements, and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3), for Defendants' violations of the Fair Debt Collection Practices Act;

d.      Declaration that Defendants' practices complained of herein are unlawful;

e.      An injunction requiring Defendants to cease and desist from engaging in these unlawful practices, including enforcing the Mechanic's Lien and collecting the Debt; and

f.      For such other and further relief as to the Court deems necessary and just and equitable.

Respectfully submitted,

**CHRISTENSEN SAMPSEL PLLC**

Dated: April 19, 2024          /s/ Carl E. Christensen
Carl E. Christensen (#350412)
Christopher Wilcox (#392536)
Ryan P. Supple (#395838)
305 North Fifth Avenue, Suite 375
Minneapolis, MN 55401
Ph: (612) 473-1200
carl@christensensampsel.com
chris@christensensampsel.com
ryan@christensensampsel.com

**CONSUMER JUSTICE CENTER, P.A.**

Thomas J. Lyons, Jr. (#249646)
Carter B. Lyons (#0403655)
367 Commerce Court
Vadnais Heights, MN 55127
Ph: (651) 770-9707
Fax: (651) 704-0907
tommy@consumerjusticecenter.com
carter@consumerjusticecenter.com

*Attorneys for Plaintiffs James and
Amanda Tjaden and the Putative Class*