UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| James and Amanda Tjaden, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Brutlag, Trucke & Doherty, P.A., Spring Lake Park Lumber Co., and Perfekt, Inc.,<br><br>Defendants. | Civil No. 24-cv-1452 (KMM/DJF)<br><br>**ORDER** |

This matter is before the Court on Plaintiffs James and Amanda Tjadens' *Motion To Quash Or For Protective Order* pursuant to Federal Rules of Civil Procedure 45(d)(3)(A) and 26(c) ("Motion") (ECF No. 62). Plaintiffs move to quash Defendant Brutlag, Trucke, & Doherty's ("BTD") subpoena to depose their counsel, Ryan Supple, or in the alternative to obtain a protective order precluding the deposition. (*Id.*) The Court held a hearing on the matter on June 11, 2025. (*See* ECF No. 75.) Christoper Wilcox appeared on behalf of Plaintiffs, and Patrick Newman and Beth McCanne appeared on behalf of Defendant BTD. (*See id.*)

**I.     Background**

    **A.     The State Court Mechanic's Lien Litigation**

In July 2022, Plaintiffs commissioned a general contractor, Kohaven, to build them a home located at 16857 Guarani St NW, Andover, Minnesota, 55304 (the "Home" or "Project" or "Property") ("Complaint") (ECF No. 1 ¶ 17). Plaintiffs paid Kohaven in full, but Kohaven did not fully pay its subcontractors or suppliers for their work and materials on the Home. (*Id.* ¶ 30.) In response, several of those subcontractors and suppliers sought to recover Kohaven's debt from Plaintiffs by filing mechanic's liens against Plaintiffs' Home. (*Id.* ¶ 31.)

On August 10, 2023, Mr. Supple—on behalf of Plaintiffs—sent a letter ("August 10, 2023 Letter") to every subcontractor and supplier for the Home that they could identify, including Defendant Spring Lake Park Lumber Co., stating the following:

    a.    "In a response to an inquiry from the Minnesota Department of Labor and Industry, Kohaven represented that it still owes thirteen subcontractors a total of $195,378.17 for work and materials furnished for the Project."

    b.    "With this letter, we are providing you with notice that any mechanic's lien filed against the Home for work or materials furnished for the Project would be invalid … The Tjadens, as the owners of the Home, were not provided with any pre-lien notice required by this statute. As more than 45 days has elapsed since your work and/or materials were first furnished for the Project, any attempt to file and enforce a lien is time barred and therefore would be invalid."

    c.    "Moreover, you are precluded from filing a lien because the Tjadens paid Kohaven in full in April of 2023 before receiving a pre-lien notice from you. As such, your remedy for any non-payment would be through a claim against Kohaven, not a mechanic's lien against the Home."

    d.    "Now that you have been provided this information and notice, please be advised that any attempt to file a lien against the Home—and any failure to remove a lien that currently exists—may subject you to liability for a claim for slander of title."

(*Id.* ¶ 50; *see also* ECF No. 71-1 at 2-3.) The only subcontractor that continued to try to collect its debt by enforcing a mechanic's lien after receiving the August 10, 2023 Letter was Defendant Spring Lake Park Lumber Co. (ECF No. 1 ¶ 51.)

Acting as counsel for Spring Lake Park Lumber Co., Defendant BTD emailed Mr. Supple on August 22, 2023 and stated that it would be in touch soon regarding the August 10, 2023 Letter. (ECF No. 71-2 at 6.) Defendant BTD claims it sent another email to Mr. Supple on August 29, 2023, attaching a letter ("August 29, 2023 Letter") outlining Defendant Spring Lake Park Lumber Co.'s position with respect to its mechanic's lien rights. (ECF No. 70 at 3.) Plaintiffs dispute BTD's claim that it sent the August 29, 2023 Letter on that date, and during the hearing on Plaintiffs'

Motion, counsel for BTD acknowledged that he could not produce evidence confirming that it did so.

Having received no response from Mr. Supple to the August 29, 2023 Letter, Defendant BTD sent an email to Mr. Supple on September 20, 2023 with copies of following documents attached: (1) the August 10, 2023 Letter; (2) the August 29, 2023 Letter; (3) Spring Lake Park Lumber Co.'s invoice to Kohaven for the labor and/or materials it furnished on the Home; (4) a purported pre-lien notice dated December 19, 2022, addressed to "16587 Guarani St" [rather than "16857 Guarani St."]; and (5) a USPS tracking printout that, according to Plaintiffs, shows the above purported pre-lien notice was mailed to "16587 Guarani St" on December 19, 2022 and returned to the sender as undeliverable[1] ("September 20, 2023 Email") (ECF No. 1 ¶ 54; *see also* 71-2 at 5). The September 20, 2023 Email also stated that if Plaintiffs were not interested in attempting to resolve the matter, Defendant BTD intended to start a foreclosure action. (ECF No. 71-2 at 5.) Plaintiffs do not dispute that Mr. Supple received the September 20, 2023 Email on that date with its attachments.

Defendant BTD states that because Mr. Supple did not respond to the September 20, 2023 Email, it emailed him again on October 12, 2023, requesting input. (*Id.* at 4-5.) Mr. Supple responded later that same day, acknowledging he had received the September 20, 2023 Email but claiming the first time he received the August 29, 2023 Letter was as an attachment to that email. (*Id.* at 4.) He also maintained that Spring Lake Park Lumber Co.'s mechanic's lien was invalid and stated that Plaintiffs were not interested in settling. (*Id.* at 3.) Of particular importance to the dispute now before the Court, Mr. Supple did not indicate in his response (or at any time before BTD filed suit) that the mechanic's lien was invalid because Defendant Spring Lake Park Lumber Co. sent the purported pre-lien notice to the wrong address.

---

[1] Plaintiffs did not submit a copy of the USPS tracking notice in support of their Motion.

3

On October 25, 2023, Defendant BTD filed a foreclosure action on behalf of Defendant Spring Lake Lumber Co. against Plaintiffs in Minnesota State Court.  (ECF No. 1 ¶ 66.)  On November 9, 2023, Mr. Supple sent Defendant BTD a five-page letter (the "November 9, 2023 Letter") stating Plaintiffs' position that Defendant Spring Lake Lumber Co.'s mechanic's lien was invalid because: (1.) Plaintiffs were not served the pre-lien notice because it was delivered to the *wrong address*; (2) the address where it was delivered created no reasonable expectation of service on Plaintiffs [it was an unfinished home they were building]; (3.) the contractor was paid in full before Plaintiffs received the notice because they never received it; (4) the lien was time-barred and; (5) Spring Lake Lumber Co.'s claim is against the contractor and its carelessness did not give rise to a claim against Plaintiffs.  (ECF No. 71-4 at 2-6.)  The letter advised, "We have repeatedly put you on notice that this mechanic's lien is invalid, but your client has refused to release it, and you took affirmative action to collect a legally barred debt by serving this lawsuit." (*Id.* at 2.)  Therefore, the letter stated, "the Tjadens now have a claim against Spring Lake Lumber for slander of title and a claim against your firm for violations for the Fair Debt Collection Practices Act …." (*Id.*)

Based on the record before the Court, November 9, 2023 is the first date when Mr. Supple specifically argued that the lien was invalid because Defendant Spring Lake Lumber Co. sent the pre-lien notice to the wrong address.  In response to Mr. Supple's November 9, 2023 Letter, Defendant BTD dismissed Spring Lake Lumber Co.'s foreclosure action without prejudice on November 15, 2023.

### B.     The Federal Lawsuit

Plaintiffs commenced this action on April 19, 2024 (ECF No. 1) seeking reimbursement for the legal fees they had to pay Mr. Supple's firm in defending against the foreclosure action, statutory damages under the FDCPA, emotional distress damages arising from the foreclosure litigation,

4

punitive damages, and equitable relief.

In relevant part, Plaintiffs' Complaint alleges:

> 78. Spring Lake Lumber, [ and BTD] … knew or should have known that the Mechanic's lien was invalid when it mailed its lien statement to the wrong address on or about July 17, 2023.
>
> 79. [BTD] and Spring Lake Lumber knew or should have known that the Mechanic's Lien was invalid when it reviewed documents stating that the prelien notice and lien statements were mailed to the wrong address and never received by the Tjadens. These documents include the prelien notice, the USPS tracking for the same, and the lien statement. [...]
>
> 80. [BTD] knew or should have known that the Mechanic's Lien was invalid when the Tjadens' counsel informed [BTD] of that in an email dated October 13, 2023.

(ECF No. 1 ¶¶ 78-80).

Defendant BTD asserts the following affirmative defenses to Plaintiffs' Complaint:

> 230. BTD alleges that, to the extent [Plaintiffs] have suffered any damages, which is denied, they were caused by Plaintiffs and/or parties over which BTD has no[] control.
>
> 231. BTD alleges that it acted at all times in good faith and in compliance with the requirements of the FDCPA.
>
> 232. BTD alleges that, to the extent that any claimed failure to comply with the FDCPA occurred (which is denied), such occurred as the result of an unintentional, bona fide error, notwithstanding BTD's maintenance of policies and procedures designed to avoid such error.

(ECF No. 14 ¶¶ 230-232.)

On May 7, 2025, Defendant BTD served a subpoena on Mr. Supple identifying four deposition topics and one document request:

> 1. Your communications with BTD regarding the Tjadens and/or the Property.
>
> 2. Your receipt of pre-lien notices and lien statements regarding the Property.
>
> 3. Your knowledge regarding the transposed numbers on the pre-lien notice and lien statement, and Your decision to raise the error to BTD.

5

    4.    The attorneys' fees and costs your firm has charged to the Tjadens relative to the Property, including but not limited to the Tjadens efforts to recover from the general contractor and developer; the bankruptcy matter involving the general contractor and developer; and all mechanic's liens asserted or attempted to be asserted against the Tjadens and/or the property.

("Topics") (ECF No. 66-1). During the hearing on Plaintiffs' Motion, the parties stated that they agreed to strike Topic 4 and related document request. Plaintiffs now move to quash the remaining three Topics. (ECF No. 62.) In its opposition to Plaintiffs' Motion, Defendant BTD further agreed to strike the language "Your decision to raise the error to BTD" from Topic 3. (ECF No. 70 at 5 n.3.)

## II. Legal Standard

Under Federal Rule 26(c), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …." Fed. R. Civ. P. 26(b)(1). The Court has broad discretion to control the breadth and scope of discovery and to determine whether discovery is burdensome or oppressive. *See* Fed. R. Civ. P. 26(b)(2)(C); *Roberts v. Shawnee Mission Ford, Inc.*, 352 F.3d 358, 362 (8th Cir. 2003) (the Rules "confer broad discretion on the court to decide when a protective order is appropriate and what degree of protection is required") (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)). On matters relating to depositions, Rule 26(c) permits the Court to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense …." Fed. R. Civ. P. 26(c)(1).

Under Fed. R. Civ. P. 45(d)(3)(A), the Court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). A party may depose opposing trial counsel only under limited circumstances. *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th

Cir. 1986); *see also Pamida, Inc. v. E.S. Original, Inc.*, 281 F.3d 726 (8th Cir. 2002).  In *Shelton*, the Eighth Circuit held that the Court should permit a party to depose opposing counsel only when: (1.) no other means exist to obtain the information; (2.) the information sought is relevant and non-privileged; and (3.) the information sought is crucial to the presentation of the case.  *Shelton*, 805 F.2d at 1327.

The Eighth Circuit later clarified in *Pamida* that "the *Shelton* test was intended to protect against the ills of deposing counsel in a pending case which could potentially lead to the discourse of the attorney's litigation strategy."  *Pamida*, 281 F.3d at 730.  In *Pamida*, a retailer—Pamida—sued a manufacturer for reimbursement of its attorney fees and costs incurred in an underlying patent infringement suit in which it was the defendant.  *Id.* at 726.  Pamida had the same counsel in both the underlying patent infringement suit and the indemnification suit.  *Id.* at 728.  After the underlying patent infringement suit settled, the manufacturer served Pamida's attorneys "with subpoenas seeking both deposition testimony and the production of documents relating to [their] representation of Pamida."  *Id.* at 728-29.  Pamida moved to quash the subpoenas.  "The magistrate judge denied the motion to quash with respect to testimony and documents concerning the patent infringement suit, but granted it with respect to testimony and documents concerning the [ongoing] indemnification action."  *Id.* at 729 (footnote omitted).

The district judge upheld the magistrate judge's order and the Eighth Circuit affirmed.  *Id.*  In doing so, the Eighth Circuit held that although *Shelton* applied to the pending indemnification case, it did not apply to the concluded patent infringement case.  *Id.* at 730.  It explained that "*Shelton* was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial."  *Id.*  The *Pamida* court

7

thus held that a party seeking a deposition regarding *concluded* litigation must demonstrate that the information sought regarding the prior concluded case: (1.) is known only by the opposing attorney(s); (2.) is crucial to the current case; and (3.) there has been a waiver of the attorney-client privilege or the work product privilege has either been waived or the standard for disclosure of such materials has been satisfied under Fed. R. Civ. P. 26(b)(3). *Id.* at 730-31.

### III.   Discussion

As a threshold matter, the parties dispute whether the *Shelton* or *Pamida* standard applies to this action. They largely disagree over whether the underlying foreclosure action has concluded. Plaintiffs maintain that *Shelton* applies because "the underlying litigation has not concluded—it has merely been transformed, with the parties having switched roles." (ECF No. 63 at 9.) Defendant BTD argues *Pamida* is controlling because the foreclosure action was dismissed, and further maintains that Plaintiffs' Motion fails under both *Pamida* and *Shelton.* (ECF No. 70 at 9-13.)

The Court finds that *Pamida* is the appropriate legal standard because Defendant BTD's proposed deposition Topics seek only information related to the completed foreclosure action. The Court is not persuaded by Plaintiffs' argument that the current litigation is merely a "continuation" of the foreclosure action. The foreclosure action was dismissed in state court over a year ago.[2] The current litigation—a purported federal class action arising under the FDCPA—bears no resemblance to the dismissed mechanic's lien foreclosure suit. As in *Pamida*, to the extent the foreclosure action gave rise to the current matter, the foreclosure action itself was an entirely separate, concluded case. Both this case and *Pamida* largely revolve around the plaintiffs' demand for reimbursement of

---

[2] Even though the dismissal was without prejudice, any foreclosure action is now time–barred because it has been more than a year since Defendant Spring Lake Park Lumber Co. worked on Plaintiffs' Home. *See* Minn. Stat. § 514.12, subd. 3 (a mechanic's lien is unenforceable if a complaint or answer has not been filed within one year after the last time the lienholder performed services related to the lien).

attorneys' fees and other damages arising from the fact that the previous lawsuit was filed. And while the attorneys in both matters happen to be the same, "*Shelton* was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial." *Pamida*, 281 F.3d at 730.

The Court thus applies the *Pamida* standard and analyses whether: (1.) the information Defendant BTD seeks in Mr. Supple's deposition is known only by him; (2) the information is crucial to the current case; and (3.) either the attorney-client privilege or the work product privilege has been waived or the standard of disclosure of such materials has been satisfied under Fed. R. Civ. P. 26(b)(3). *Id.* at 730-31. The Court finds that BTD has met this test.

Defendant BTD seeks to depose Mr. Supple about his: (1.) communications with BTD regarding the Home; (2) receipt of pre-lien notices and lien statements regarding the Home; and (3) knowledge regarding the transposed [address] numbers on the pre-lien notice. (ECF No. 66-1; ECF No. 70 at 5 n.3.) First, each of these Topics seeks factual information that is exclusively known to Mr. Supple and cannot be obtained from other sources. Defendant BTD cannot discern when Mr. Supple read its messages to him; when he received and read the relevant lien documents; when he learned that two numbers in the address were transposed; how he learned of the transposition; or how quickly he responded to that information in relation to communications with Defendant BTD.

Second, each Topic is crucial to Defendant BTD's defenses in this lawsuit. BTD's argument in opposition to the Motion appears to be premised on the notion that if Mr. Supple had asserted—at any point before the foreclosure action was filed—that the lien was invalid because the pre-lien notice went to the *wrong address*, then that lawsuit would have been avoided altogether. BTD thus asserts that it needs Mr. Supple's testimony because: (1.) if Mr. Supple was previously aware of the

9

incorrect address but chose not to mention it until after the foreclosure action was filed, Plaintiffs failed to mitigate the damages they are claiming in this case; and on the other hand (2.) if Mr. Supple received BTD's September 20, 2023 Email with the attached documents and did not realize the pre-lien notice had gone to the wrong address until he sent his November 9, 2023 Letter, then his testimony would establish that BTD's similar failure to immediately recognize the mistaken address was a good faith, bona fide error, which did not reflect attorney incompetence. (*See* ECF No. 70 at 7, arguing that the information they seek is relevant to Plaintiffs' mitigation of damages in addition to "BTD's good faith and bona fide error defenses, as well as its defenses under the 'competent attorney' standard".) Though the undersigned makes no determination regarding whether any of the information BTD seeks from Mr. Supple ultimately will be relevant or admissible at trial, the Court finds it is potentially crucial to BTD's defenses for the reasons BTD asserts. Plaintiffs contend Mr. Supple's testimony is not truly necessary because BTD can call other attorneys or legal experts to testify regarding the legal standard of care that BTD should have exercised. The Court is not persuaded by this argument. Mr. Supple is the *only* attorney, other than the attorneys at BTD, who received and responded to the lien documents at issue. Unlike any other attorney BTD might call in its defense, Mr. Supple's testimony would not be based on hypotheticals, but is direct evidence of how an attorney would respond to those documents. Moreover, the Court agrees that if Mr. Supple was aware of the address error and failed to mention it until after the allegedly damaging foreclosure action was filed, that information could potentially bear on mitigation.

      Third, because Defendant BTD has agreed to strike the language in Topic 3 regarding Mr. Supple's decision-making process, none of the Topics appear to implicate attorney-client privilege or the work product doctrine. Rather, the Topics are limited to factual information regarding *when* Mr.

Supple learned of the address transposition error; *how* he learned about it[3]; and *what* he did with that information in relation to his communications with Defendant BTD.

For these reasons, the Court denies Plaintiffs' Motion but strictly limits the deposition to the first three Topics. The Court also strikes the following language from Topic 3: "Your decision to raise the error to BTD."

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion To Quash Or For Protective Order (ECF No. 62) is **DENIED** as follows:

1.  Defendant BTD may depose Mr. Supple on the following three topics, *only*:

    1.  His communications with BTD regarding the Tjadens and/or the Property;

    2.  His receipt of pre-lien notices and lien statements regarding the Property; and

    3.  His knowledge regarding the transposed numbers on the pre-lien notice and lien statement.

Dated: June 20, 2025         *s/ Dulce J. Foster*
                             DULCE J. FOSTER
                             United States Magistrate Judge

---

[3] To the extent any deposition question cannot be answered without disclosing the content of attorney-client privileged communications between Plaintiffs and Mr. Supple, Plaintiffs may object on that basis at the time of questioning.