IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

---

James and Amanda Tjaden, on
behalf of themselves and all others
similarly situated,

             Plaintiffs,

v.

Brutlag, Trucke & Doherty, P.A.,
Spring Lake Park Lumber Co, and
Perfekt, Inc.

             Defendants.

Civil No. 0:24-CV-01452 (KMM/DJF)

**DEFENDANT PERFEKT, INC.'S
MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT
SPRING LAKE PARK LUMBER
CO.'S MOTION FOR PARTIAL
SUMMARY JUDGMENT [Doc. 79]**

---

Defendant Perfekt, Inc. ("Perfekt") respectfully submits this memorandum
in opposition to Defendant Spring Lake Park Lumber Company's ("Spring Lake")
Motion for Partial Summary Judgment. For the reasons set forth herein, Perfekt
respectfully requests that Spring Lake's motion be denied.

## INTRODUCTION

Perfekt has asserted a crossclaim alleging Spring Lake has a contractual
obligation to defend and indemnify Perfekt from the claims Plaintiffs have
asserted in this action. (Doc. 39). The crossclaim is derived from Perfekt's Terms
& Conditions of Use. Spring Lake seeks dismissal of Perfekt's crossclaim, arguing
that while the scope of the Terms & Conditions is limited to acts of negligence,
Plaintiffs have not asserted a negligence claim. As a fallback position, Spring Lake

argues the indemnity provision is unenforceable because, the argument goes, the Terms & Conditions did not fairly apprise Spring Lake of its obligation to defend and indemnify Perfekt from Perfekt's own negligence.

Spring Lake's arguments fail as a matter of law, for several reasons. *First*, this Court has concluded that a negligent misrepresentation claim triggers an indemnitor's duty to defend an indemnitee from acts of negligence. Further, it is well settled that alleged violations of the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*, also trigger the duty to defend an indemnitee from acts of negligence. And here, Plaintiffs allege Spring Lake and Perfekt made negligent misrepresentations and violated the Consumer Fraud Act. Contrary to Spring Lake's assertions, Plaintiffs' allegations are more than sufficient to trigger Spring Lake's duty to defend.

*Second*, Spring Lake turns a blind eye to its own negligence in misrepresenting the condition of Plaintiffs' property when it hired Perfekt in December 2022. Under the Terms & Conditions, Spring Lake agreed to defend and indemnify Perfekt from liability arising out of the information Spring Lake submitted. As Plaintiffs allege, they hired a contractor to construct a new home in Andover, Minnesota, yet when Spring Lake hired Perfekt, Spring Lake indicated the lien would attach to a residential *remodeling* project. This misrepresentation was material to Perfekt's lien services because Spring Lake's representation that

2

the property was undergoing a remodeling project signaled to Perfekt that the Tjadens lived at the address Spring Lake provided. Spring Lake's negligent misrepresentation independently triggers Spring Lake's duty to defend and indemnify, rendering moot the second issue Spring Lake raises.

*Third*, the language in the Terms & Conditions fairly apprised Spring Lake of its duty to defend and indemnify Perfekt from liability arising out of Perfekt's own negligence. Spring Lake agreed "to specifically indemnify Perfekt, Inc. for . . . any liability created by the filing of the submitted information," and to "indemnify[] and defend[] Perfekt, Inc. in the event it is sued for any reason(s) related to the filing of this lien by any party third party." Perfekt's use of "the submitted information," including the "filing of this lien" against the Plaintiffs' property describe the very service Spring Lake paid Perfekt to perform. Spring Lake had fair notice it would be obligated to defend and indemnify Perfekt from Perfekt's own negligence, and Spring Lake's public policy argument fails as a matter of law.

At a minimum, there is a genuine fact dispute regarding whether and to what extent Spring Lake and Perfekt's alleged negligence caused or contributed to Plaintiffs' alleged damages. Accordingly, Spring Lake's motion should be denied.

## **FACTS**

3

Perfekt offers the following citations to the record in response to the assertions raised in Spring Lake's brief. (Doc. 81).

**Perfekt, Inc. Provides Mechanic's Lien Management Services**

Keith Estenson has been the owner and CEO of Perkekt, Inc. since Estenson purchased the company in 2007. (Ex. A (Deposition of Perfekt's Rule 30(b)(6) designee) at 10:2-6). Perfekt's employees consist of Keith Estenson, his wife, Susan Estenson, their son, Dan Estenson, and Keith and Susan Estenson's daughter-in-law, Carrie. (*Id.* at 12:21 – 13:14).

Perfekt provides mechanic's lien services for contractors and materials suppliers, consisting of (i) sending pre-lien notices, (ii) filing mechanic's liens, and (iii) filing lien satisfactions. (Ex. A at 15:22 – 16:20). Although Perfekt provides services in Minnesota, Wisconsin, North Dakota and South Dakota, 80% of Perfekt's lien services are rendered in Minnesota. (*Id.* at 16:21 – 17:5).

Perfekt's customers order lien services by entering the information Perfekt relies on to prepare and send the lien notice, statement and satisfaction through an online portal. (*Id.* at 17:6 - 19:3). Among other things, customers are asked to identify whether the property to which the lien will attach is new construction or a remodeling project. (Ex. A at 19:13 – 20:7). Once a lien request is submitted, Perfekt compares the address provided by the customer to the online tax

4

information and deed filed with the county recorder's office to determine whether the name and address for the property match. (*Id.* at 21:15 – 24:22).

**Spring Lake Park Lumber Hires Perfekt**

Spring Lake Park Lumber submitted the information Perfekt relied on to prepare and send the prelien notice and later, record and send the mechanic's lien statement in this case through the internet portal on Perfekt's webpage. (Ex. B Deposition of Spring Lake's Rule 30(b)(6) designee, Kris Francen) at 125:22 - 127:8; Ex. C (Perfekt Service Order, SLPL-000001 – SLPL-000002)).   The information Spring Lake submitted appears on a document titled Service Order. (Ex. C).

Crucially, under the heading "Project Information" Spring Lake indicated the "Type of Project" was "Residential Remodel":

| Project Information | | | |
|---|---|---|---|
| **Type of Project** | **Residential Remodel** | Labor/Materials | materials |
| Your Role in Project | Supplier | Labor/Materials Type | lumber/building |
| "If "Other", Please Specify Project Type | | Enter Description if Not listed Above: | |

(Ex. C at SLPL-000002) (highlighting added).   As alleged in the Complaint, however, Plaintiffs hired Renovation Concepts d/b/a Kohaven "to build a new home for them[.]" (Doc. 1, ¶¶ 1, 16, 54.d., 76, 220.a.).

The information Spring Lake submitted to Perfekt came from Spring Lake's job opening sheet, which for purposes of this case, was completed by Spring Lake's salesperson, Matt Berger. (Ex. B at 120:22 121:9, 122:20 – 1244).   To date, Spring

Lake has not produced the job opening sheet relevant to this case. (*Id.* at 121:4 – 122:4).

The information Matt Berger entered on the job opening sheet came from the general contractor for the construction of Plaintiffs' new home, Renovation Concepts d/b/a Kohaven. (Ex. B at 124:5-19). The job opening sheet specifically asks the Spring Lake salesperson to determine whether the project was new construction or a remodeling project and record that information on the sheet. (*Id.* at 125:13-18). Kris Francen, who is Spring Lake's Fed. R. Civ. P. 30(b)(6) designee, submitted the information on the job opening sheet through Perfekt's online portal. (*Id.* at 127:14-19, 140:21 – 141:4).

## Perfekt's Terms & Conditions of Use Shift Liability for Claims Arising Out of Perfekt's Lien Services to Spring Lake Park Lumber

After entering the information from Spring Lake's job opening sheet into Perfekt's online portal, Ms. Francen checked the box indicating Spring Lake agreed to abide by Perfekt's Terms and Conditions:



(Ex. B at 127:20-25; Ex. 3). Ms. Francen has submitted information to Perfekt in connection with requests for prelien notices and lien statements dating back to at

6

least 2010. (*Id.* at 128:14 – 129:7). During that time, Ms. Francen has reviewed

Perfekt's Terms and Conditions on multiple occasions. (*Id.* at 128:8 – 130:13).

In accepting Perfekt's Terms & Conditions, Spring Lake agreed Perfekt

would not be responsible for any misrepresentations made by Spring Lake, and

expressly acknowledged that Perfekt would not independently verify the

information Spring Lake provided:

> I understand and agree that Perfekt, Inc. is not responsible or liable
> for any misrepresentations made by me or my company. **I
> understand and agree that Perfekt, Inc. will prepare a lien
> document based only on the information submitted by me or my
> company, and that the accuracy, completeness and/or reliability of
> this information is not guaranteed, checked, monitored or
> otherwise reviewed by Perfekt, Inc. At no time will Perfeckt review
> or be responsible to review my answers for legal sufficiency**, draw
> legal conclusions, provide legal advice or apply the law to the facts of
> my particular situation. This website is not a substitute for the advice
> of an attorney.

(Ex. D at PERFEKT000001) (emphasis added). Further, the Terms & Conditions

expressly state Spring Lake will defend and indemnify Perfekt "for any

misrepresentations made by [Spring Lake]," "for any liability created by the filing

of the submitted information," and that Spring Lake's duties are "strictly limited

to acts of negligence":

> For the purposes of signing and filing this lien only, I appoint Perfekt,
> Inc. and its employees and agents as an agent of me and/or my
> company, and **I specifically indemnify Perfekt, Inc. for any
> misrepresentations made by me or my company, and/or any
> liability created by the filing of the submitted information**. **I agree
> to indemnify and defend Perfekt, Inc. in the event of any dispute**

**that arises as a result of the filing of this lien, specifically including, but not limited to, indemnifying and defending Perfekt, Inc. in the event it is sued for any reason(s) related to the filing of this lien by any party third party. The exculpatory clauses herein are strictly limited to liability for acts of negligence**. In any event, I agree that Perfekt's liability to me and/or my Company in connection with any service Perfekt provides me and/or my Company shall be limited to the cost of such service.

(*Id.* at PERFEKT000002) (emphasis added).

## Spring Lake Knew or Should Have Known Plaintiffs' Property Was New Construction and Not a Remodeling Project

Spring Lake issued a number of invoices as Renovation Concepts ordered materials for the construction of Plaintiffs' new home. (Ex. E (SLPL-000006, SLPL-000008 – SLPL-000026)). On 19 different occasions, a Spring Lake employee delivered materials to the address where the home was being constructed: 16857 Guarani Street in Andover, Minnesota. (Ex. B at 132:9 – 135:9). Despite well over a dozen opportunities for Spring Lake to observe the materials Renovation Concepts ordered were being delivered to a new construction site and not a remodeling project, Spring Lake never updated the Service Order to alert Perfekt to the fact there was no one living at the address Spring Lake provided. (*Id.* at 135:10-16). Indeed, the Service Order History shows Spring Lake made no changes to the Project Information or Project Type fields on the Service Order to alert Perfekt to the fact the property was new construction and therefore vacant. (Ex. C at SLPL-000002 ("Service Order History")).

8

**Spring Lake's Misrepresentation Was Material to Perfekt's Evaluation of the Pre-lien Notice and Lien Statement**

Spring Lake's misrepresentation that the address it provided was a remodeling project and not new construction was material to Perfekt's evaluation of whether the prelien notice was effective after the mailing was returned to Perfekt by the United States Post Office. Keith Estenson testified that if Spring Lake had indicated the property was new construction, then Perfekt would have known to ask Spring Lake for more information before concluding the prelien notice was sufficient:

Q.    And if Spring Lake Park Lumber, when the service order was originally created, so this is before the pre-lien notice is sent in December of 2022, had indicated that the property in question was new construction instead of remodeling, as they indicated, that would have indicated to Perfekt, when the pre-lien notice came back, that that notice is that a true statement?

A.    That the pre-lien notice was no longer valid if it was new construction, no. If -- **if we were told it was new construction and the pre-lien notice was returned to us, we would have -- we would have questioned if the reason was it was returned because the Tjadens weren't actually living there. But because it was "remodel," that just fell in line with everything else that the Tjadens' address was the situs address, was the tax screen address, was the lien statement address**.

Q.    A better way to ask the question that I just posed was, **if the information provided on your company portal from Spring Lake Park Lumber had indicated the property in question was new construction, then when the pre-lien notice was returned, that would have caused Perfekt to go back to Spring Lake Park Lumber and get more information about the property, whether the Tjadens were even there.**

A.    Yes.

9

(Ex. A at 107:18 – 108:24) (emphasis added).  Mr. Estenson's testimony did not

waiver when he was asked the same question by Spring Lake's counsel:

Q. So if coming back vacant doesn't raise any alarm bells at Perfekt, then I don't understand. Tell me what difference it would have made had Spring Lake Park chosen "new construction" in our system as far as how this whole snafu regarding the transposed number would have been different. [Objection]

A. **What "residential remodel" would cue me to is that there's a good chance that the homeowner lives at the situs, at the project address.** It's one of the factors that we look at when we're trying to determine whether we've got the right address for the homeowner that we're trying to serve. If it was new construction, we would be taking a close look at the tax screen and seeing if the tax screen is showing a different address for the owner, a different address for whoever the taxpayer might be, if those addresses are different than the actual construction site address.

In this case, it's residential remodel. So this was a very easy project for us to research. We only had one address. Everything lined up. **And the fact that it says "residential remodel," there was no indication for us to look any further to see if there's a different address that we should be serving these notices to.** So the fact that then we get returned envelopes that say "vacant" from the U.S. postal service, in hindsight, those were the wrong -- those were the wrong notations for the postal service. The postal service should have said this address does not exist.

* * *

Q. Right. And I'm sorry. It's been a long day and we're all really tired and my brain power is waning, but it seems to me that if you send a pre-lien notice thinking it's a remodel, meaning people live there, and it comes back vacant, that that would cause more alarm bells than not.
Does that make sense?

A. Yeah, that makes sense. [Objection]

10

> THE WITNESS: But that's not part of our process. We don't look at it beyond that.
> [Objection]
> THE WITNESS: **We've been advised by our lien law attorney that sent is served.** So we've done our job in perfecting the preliminary notice, if we have sent it to the best address we can find. And there was -- **since it's a remodel, there was no indication that we needed to search further than what the tax screens had been telling us was the address to send it to**.

(*Id.* at 117:10 – 118:23; 118:25 – 119:24) (emphasis added).

As Keith Estenson explained, when the post office returned the prelien notice Perfekt mailed in December 2022, the envelope in which the notice was sent was marked "vacant," indicating the house was not occupied. (*Id.* at 48:25 – 51:14). Because Spring Lake indicated the property was undergoing a remodeling project, Perfekt concluded the Tjadens lived at the address Spring Lake provided and concluded the prelien notice was therefore valid. (*Id.*).

## STANDARD OF REVIEW

**Standard of Review for Summary Judgment**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Cearley v. Bobst Gr. N. Am. Inc.*, 129 F.4th 1066, 1069 (8th Cir. 2025). The moving party bears the burden of demonstrating the material facts are undisputed. *Celotex*, 477 U.S. at 322. If the moving party properly supports a

motion for summary judgment, then the party opposing summary judgment must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *McGowen, Hurst, Clark & Smith, P.C. v. Com. Bank*, 11 F.4th 702, 710 (8th Cir. 2021). A fact dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Courts must view the inferences to be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Becker v. City of Hillsboro, Mo.*, 125 F.4th 844, 851 (8th Cir. 2025).

**Standard of Review for Contract Interpretation**

"Minnesota upholds principles of freedom of contract, in which 'parties are generally free to allocate rights, duties, and risks[.]' *In re ResCap Liquidating Tr. Litig.*, 428 F. Supp. 3d 53, 77–78 (D. Minn. 2019) (*citing Lyon Fin. Servs. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 545 (Minn. 2014)). "'Courts are not warranted in interfering with the contract rights of parties as evidenced by their writings which purport to express their full agreement[.]" *In re ResCap Liquidating Tr. Litig.*, 428 F. Supp. 3d at 77–78 (*citing Cady v. Bush*, 283 Minn. 105, 166 N.W.2d 358, 362 (1969)). When construing a contract under Minnesota law, a court's "primary goal . . . is to determine and enforce the intent of the parties." *Loftness Specialized Farm Equip.,*

12

*Inc. v. Twiestmeyer*, 818 F.3d 356, 361 (8th Cir. 2016) (*quoting Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc.*, 666 N.W.2d 320, 323 (Minn. 2003)). Courts apply the plain and ordinary meaning of contractual terms to the interpretation of a contract, and the terms are construed in the context of the entire contract. *Quade v. Secura Ins.*, 814 N.W.2d 703, 705 (Minn. 2012) (*citing Emp'rs Mut. Liab. Ins. Co. of Wis. v. Eagles Lodge of Hallock, Minn.*, 282 Minn. 477, 165 N.W.2d 554, 556 (1969)). Courts attempt to harmonize all of the contract's provisions. *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 526 (Minn. 1990).

**Standard of Review for Determining Duties to Defend and Indemnify**

The duties to defend and indemnify may arise out of a contractual relationship "where there is an . . . explicit undertaking to reimburse for liability of the character involved." *Residential Funding Co., LLC v. Acad. Mortg. Corp.*, 59 F.Supp.3d 935, 946 (D. Minn. 2014) (Nelson, J.); *Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 415 (Minn. 1997). A duty to defend arises if any of the claims asserted in the complaint fall within the scope of the indemnity agreement. *Cont'l Ins. Co. v. Daikin Applied Americas Inc.*, 998 F.3d 356, 359 (8th Cir. 2021); *Murray v. Greenwich Ins. Co.*, 533 F.3d 644, 648 (8th Cir. 2008) (noting indemnitor must defend against "'any claim [that] is arguably covered under a policy.'"). To determine whether a claim falls within the scope of coverage, the allegations in the complaint are compared to the wording of the indemnity agreement. *Cont'l Ins. Co.*, 998 F.3d

at 360. The duty to defend may also be established by "extrinsic facts" showing the existence of an arguably covered claim. *Cont'l Ins.*, 998 F.3d at 359 (*citing Meadowbrook, Inc. v. Tower Ins.*, 559 N.W.2d at 418, n.19).

Where questions of fact need to be discovered to determine if the indemnitor's duty has been triggered, a duty to defend exists. *Prahm v. Rupp Constr. Co.*, 277 N.W.2d 389, 391 (Minn. 1979); *Reinsurance Ass'n of Minn. v. Timmer*, 641 N.W.2d 302, 311–15 (Minn. Ct. App. 2002) (holding that a complaint for fraud and consumer fraud can be reasonably construed to include negligent misrepresentation, which would be covered as a non-intentional act), review denied (Minn. May 14, 2002).

## ARGUMENT

## I. SPRING LAKE'S MISREPRESENTATIONS ARE MORE THAN SUFFICIENT TO TRIGGER SPRING LAKE'S DUTIES TO DEFEND AND INDEMNIFY PERFEKT

Perfekt's Terms & Conditions set forth the specific circumstances that trigger Spring Lake's duty to defend and indemnify. *Residential Funding Co., supra,* 59 F. Supp. 3d at 946; *Meadowbrook, supra,* 559 N.W.2d at 415. *First*, recall that Spring Lake expressly agreed "Perfekt, Inc. is not responsible or liable for any misrepresentations *made by me or my company*," and further agreed to defend and indemnify Perfekt "for any misrepresentations *made by me or my company*," and from "any dispute that arises as a result of the filing of this lien[.]" (Ex. D) (emphasis added).

It cannot genuinely be disputed that Spring Lake misrepresented the condition of the property when it hired Perfekt to issue the prelien notice in December 2022 and when Spring Lake authorized Perfekt to record the lien statement in July 2023.  But instead of apprising Perfekt of the fact the property listed in the Service Order was new construction, Spring Lake falsely represented the property was a residential remodeling project.  Further, Spring Lake failed to correct the information on the Service Order despite the fact Spring Lake employees delivered materials to the property *20 times* between December 2022 and May 2023. (Ex. E).  Despite well over a dozen opportunities to observe the fact materials were being delivered to a new construction project Spring Lake failed to update the Service Order and alert Perfekt to the fact no one lived at the address Spring Lake provided.

The fact the project was new construction was material to Perfekt's evaluation of the prelien notice and lien statements after they were returned to Perfekt by the United States Post Office.  As Keith Estenson testified, if Perfekt had known the Tjadens' property was new construction then Perfekt would have known there was no one at the address Spring Lake provided to accept delivery. (Ex. A at 48:25 – 51:14, 107:18 – 108:24, 117:10 – 118:23; 118:25 – 119:24).  Spring Lake's failure to convey accurate information caused Perfekt to conclude the prelien notice was valid even though the notice was not delivered. (*Id.*).

15

*Second*, recall the scope of Spring Lake's duty to defend and indemnify is "strictly limited to liability for acts of negligence." (Ex. D). Plaintiffs repeatedly allege Spring Lake "'knew or should have known" the prelien notice and lien were invalid. *Stevenson v. Union Pac. R. Co.*, 354 F.3d 739, 748 (8th Cir. 2004) (noting "knew or should have known" is the language of negligence); Doc. 1 (Complaint), ¶¶ 4, 76-81 (alleging Spring Lake knew or should have known prelien notice and lien statement were invalid). Further, Plaintiffs' negligence allegations are incorporated throughout each of the Counts in their Complaint. (Doc. 1, ¶¶ 119, 149, 164, 178, 188, 203, 216, 220).

Plaintiffs' allegations show Perfekt's alleged liability was caused, at least in part, by the false information Spring Lake provided, and this conclusion is corroborated by Keith Estenson's testimony and Spring Lake's invoices. At a minimum, Spring Lake's misrepresentation regarding the condition of the property, and the extent to which Spring Lake's misrepresentations contributed to the prelien notice and lien statement being invalid, raise genuine fact disputes triggering Spring Lake's duty to defend. *See Prahm v. Rupp Constr. Co.*, 277 N.W.2d at 391 (noting a duty to defend exists when questions of fact need to be discovered to determine if duty to indemnify has been triggered); *Reinsurance Ass'n of Minn. v. Timmer*, 641 N.W.2d at 311–15.

## II. PLAINTIFFS' CONSUMER FRAUD CLAIMS (COUNT III) INDEPENDENTLY TRIGGER SPRING LAKE'S DUTY TO DEFEND AND INDEMNIFY PERFEKT

Even if Plaintiffs had not asserted a negligent misrepresentation claim

against Spring Lake and Perfekt, Plaintiffs' consumer fraud claim also trigger

Spring Lake's duty:

> The weight of authority in this jurisdiction holds that negligent misrepresentations, which are made in connection with the sale of merchandise, are actionable as consumer fraud. … Simply stated, one making representations in the sale of consumer goods can be held liable, even though he had no specific intent to falsely mislead the consumer.

*McNamara v. Nomeco Bldg. Specialties, Inc.*, 26 F. Supp. 2d 1168, 1171 (D. Minn. 1998)

(citations omitted); *Sailors v. N. States Power Co.*, 4 F.3d 610, 614 (8th Cir. 1993)

(noting Minnesota courts "have likened the statutory requirements [of Minnesota

Consumer Fraud Act] to those of negligent misrepresentation.") (citing *Church of*

*the Nativity of Our Lord v. WatPro, Inc.*, 474 N.W.2d 605, 612 (Minn. Ct. App. 1991),

aff'd, 491 N.W.2d 1 (Minn. 1992) ("Minnesota courts have held that a finding of

negligent or unintentional misrepresentation violates the Act.")); *Nelson v. Am.*

*Fam. Mut. Ins. Co.*, 262 F. Supp. 3d 835, 862 (D. Minn. 2017), aff'd, 899 F.3d 475 (8th

Cir. 2018) ("Misrepresentations made with mere negligence may violate the

MFSAA.") (citations omitted); *Timmer*, 641 N.W.2d at 315 ("[W]e have construed

the Minnesota Consumer Fraud Act to also apply to a negligent or unintentional

misrepresentation.").

17

Plaintiffs allege Perfekt violated the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* (Doc. 1 at ¶¶ 164-177). Plaintiffs allege Perfekt filed the mechanic's lien (*id.*, ¶¶ 14, 97, 131, 218, 220), that "filing the Mechanic's Lien . . . [was] done in connection with the sale of merchandise" (*id.*, ¶ 167), that Perfekt violated the Consumer Fraud Act "[b]y attempting to collect a time-barred, invalid Debt that the Tjadens did not owe (*id.*, ¶ 169), and by "misrepresent[ing]" that "Spring Lake Lumber had a legal right to collect the invalid Debt[.]" (*Id.*, ¶ 170). Further, Plaintiffs' negligence allegations against Spring Lake and Perfekt are incorporated in the consumer fraud claim. (Doc. 1, ¶¶ 4, 76-81, 119, 149, 164, 178, 188, 203, 216, 220). The allegations in the Complaint are more than sufficient to independently trigger Spring Lake's duty to defend and indemnify Perfekt.

## III. THIS COURT HAS REJECTED THE CORE ARGUMENT SPRING LAKE RAISES TO AVOID ITS CONTRACTUAL DUTY TO DEFEND AND INDEMNIFY PERFEKT

### A. Assertion of a Negligent Misrepresentation Claim Triggers a Duty To Defend and Indemnify From Acts of Negligence

Spring Lake's core argument is that negligent misrepresentation is a type of fraud and therefore, the argument goes, Plaintiffs' negligent misrepresentation claim does not trigger Spring Lake's duties to defend and indemnify Perfekt. That argument has been rejected by this Court:

> At the October 22, 2021 hearing on MedPro's motion for summary judgment, counsel for MedPro argued that negligent misrepresentation is a category of fraud. But this argument is contrary to law. *See Florenzano v. Olson*, 387 N.W.2d 168, 173 (Minn.

1986) ("Fraud is an intentional tort and scienter is an essential element."). The elements of negligent misrepresentation do not include a scienter requirement. *See Williams v. Smith*, 820 N.W.2d 807, 815 (Minn. 2012) (listing the elements of negligent misrepresentation). **MedPro has a duty to indemnify Haefner and Green Lake for any liability arising from a successful negligent-misrepresentation claim**. MedPro, therefore, is not entitled to a declaration, as a matter of law, that it has no duty to indemnify Haefner and Green Lake for any of the conduct alleged in Jennie-O's underlying state-court complaint.

*Med. Protective Co. v. Haefner*, No. 20-CV-2263 (WMW/BRT), 2022 WL 219563, at *3

(D. Minn. Jan. 25, 2022) (emphasis added); *Florenzano v. Olson*, 387 N.W.2d at 173,

n. 2 (noting that "[f]raud is distinguished from negligence by the element of

scienter required" and that "fraudulent intent" means "knowledge of the untrue

character of [the] representations").    Indeed, "a claim of negligent

misrepresentation presupposes that [the defendant] did not intend their

representations to be false." *Reinsurance Ass'n of Minnesota v. Timmer*, 641 N.W.2d

302, 313 (Minn. Ct. App. 2002) (concluding underlying complaint did not

distinguish between intentional and negligent misrepresentation and could

reasonably be construed to include both), review denied (Minn. May 14, 2002).

Contrary to Spring Lake's assertions, a negligent misrepresentation claim triggers

a duty to defend an indemnitee from acts of negligence.

Further, each of Plaintiffs' claims is based on alleged misrepresentations that

sound in negligence.  It is well settled that "'knew or should have known' language

indicates a negligence standard[.]" *Stevenson v. Union Pac. R. Co.*, 354 F.3d 739, 748

(8th Cir. 2004); *Loeffler v. City of Anoka*, No. 13-CV-2060 MJD/TNL, 2014 WL 4449674, at *10 (D. Minn. June 24, 2014) ("[T]his type of knew-or-should-have-known allegation sounds very much in negligence[.]"); report and recommendation adopted, No. CIV. 13-2060 MJD/TNL, 2014 WL 4449692 (D. Minn. Sept. 9, 2014), aff'd, 893 F.3d 1082 (8th Cir. 2018); *accord First Newton Nat'l Bank v. Gen. Cas. Co.*, 426 N.W.2d 618, 625 (Iowa 1998) ("The very definition of 'negligent misrepresentation' connotes negligent rather than intentional conduct.").[1]

Plaintiffs repeatedly allege Perfekt was negligent:

- "Perfect [sp] knew, or should have known, that Spring Lake Lumber had no present right of possession to the Tjadens' property and had no right to demand or compel payment to satisfy the invalid mechanic's lien" (Doc. 1, ¶ 4);

- "Perfekt knew or should have known that the Mechanic's Lien was invalid when they addressed the prelien notice to the wrong address on December 19, 2022, and received it back as undeliverable" (*id.*, ¶ 77); and

- "Perfekt knew or should have known that the Mechanic's Lien was invalid when it mailed its lien statement to the wrong address on or about July 17, 2023." (*id.*, ¶ 78).

---

[1] Minnesota, like Iowa, has adopted the Restatement (Second) of Torts' definition of negligent misrepresentation. *First Newton*, 426 N.W.2d at 625; *Williams v. Smith*, 820 N.W.2d at 815 ("This court has adopted the definition of negligent misrepresentation set forth in Restatement (Second) Torts § 552 (1976)[.]").

The above-quoted allegations are incorporated in each of Plaintiffs' claims. (Doc. 1, ¶¶ 119, 149, 164, 178, 188, 203, 216).   And lest there be any doubt on this point, Plaintiffs again allege "Perfekt knew or should have known" the prelien notice was invalid when the notice was sent in December 2022, and that "Perfekt knew or should have known" the lien was invalid when it was recorded in July 2023, in pleading their slander of title claim (Count VII). (*Id.*, ¶ 220.b., 220.c.). Plaintiffs' repeated allegations of negligent conduct trigger Spring Lake's duty to defend Perfekt.

### B.    The Decisions Spring Lake Cites Are Inapposite

None of the cases Spring Lake cites address the issue before the Court; i.e., whether a negligent misrepresentation claim triggers a duty to defend and indemnify from acts of negligence.  Rather, the issue in *Trooien v. Mansour* was whether the heightened pleading standard set forth in Fed. R. Civ. P. 9(b) applies to negligent misrepresentation claims. *Id.*, 608 F.3d 1020 (8th Cir. 2010).  This is most plainly demonstrated by the sentence from *Trooien* which Spring Lake only partially quoted in its brief.  The full passage states: "Under Minnesota law, any allegation of misrepresentation, whether labeled as a claim of fraudulent misrepresentation or negligent misrepresentation, is considered an allegation of fraud **which must be pled with particularity**." *Id.*, 608 F.3d at 1028 (emphasis added).

21

To the extent *Trooein* distinguishes the elements of fraudulent and negligent misrepresentation by "the required stated of mind[,]" that distinction supports Perfekt's argument. *Id.*, 608 F.3d at 1028. As Judge Wright noted in *Haefner*, *supra*, a negligent misrepresentation claim triggers a duty to defend from acts of negligence precisely because scienter is not an element of a negligent misrepresentation claim. *Id.*, 2022 WL 219563, at \*3 (*citing Florenzano v. Olson*, 387 N.W.2d at 173, n. 2). *Trooein* lends no support to Spring Lake's core argument.

Spring Lake makes the same mistake in citing *N. Am. Specialty Ins. Co. v. Wipfli, LLP*, No. CIV. 12-1531 JRT/JJK, 2013 WL 3871438 (D. Minn. July 26, 2013). Spring Lake only partially quotes *Wipfli*, obscuring the fact the case addresses the same narrow issue as *Trooien*—i.e., whether the heightened pleading standard applies to negligent misrepresentation claims. The full passage Spring Lake quotes actually states: "Negligent misrepresentation claims are considered a species of fraud and are subject to heightened pleading requirements." *Id.*, 2013 WL 3871438, at \*4. Like *Trooien*, *Wipfli* lends no support to Spring Lake's argument.

*Williams v. Tweed* is even less relevant. *Id.*, 520 N.W.2d 515 (Minn. Ct. App. 1994). Apart from the fact *Williams* did not involve a contractual indemnity provision, no negligent misrepresentation claim was asserted in that case. Rather, the decision turned on the fact the plaintiff "failed to support his claim with any

evidence of a misrepresentation[.]" *Id.*, 520 N.W.2d at 517. Indeed, the Court of Appeals *declined* to address whether the plaintiff had asserted a reckless, negligent, or deceitful misrepresentation claim precisely because no proof of "a" misrepresentation was presented. *Id.*[2]

IV.    **PERFEKT'S TERMS & CONDITIONS APPRISED SPRING LAKE OF ITS DUTIES TO DEFEND AND INDEMNIFY PERFEKT FROM ANY LIABILITY RESULTING FROM PERFEKT'S LIEN SERVICES**

To enforce a contractual indemnity provision that allows for indemnification of the indemnitee's own negligence, the agreement must "use express language that clearly and unequivocally shows the parties' intent to transfer liability. … [T]he proper test is whether the clause includes *specific* language that *expressly* shows . . . that the parties intended the clause to obligate the indemnitor to indemnify the indemnitee for the indemnitee's own negligence." *DeWitt v. London Road Rental Center*, 910 N.W.2d 412, 416 (Minn. 2018) (original emphasis).

*In re RFC & RESCAP Liquidating Tr. Action* is instructive. *Id.*, 332 F. Supp. 3d 1101, 1133 (D. Minn. 2018). *In re RFC* stemmed from the bankruptcy of Residential Funding Corporation ("RFC"), which prior to RFC's bankruptcy participated in

---

[2] While Spring Lake also cites *OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Rsch.*, 132 F. Supp. 3d 1119 (D. Minn. 2015), OmegaGenesis was only cited to identify the elements of a negligent misrepresentation claim. *OmegaGenisis* does not support Spring Lake's motion, nor does Spring Lake claim it does.

the residential mortgage backed securities market by purchasing mortgages from banks and lenders such as Primary Residential Mortgage, Inc. ("PRMI"). *Id.*, 332 F. Supp. 3d at 1118.  The issue was whether the indemnity provision in the parties' agreement required the seller of the securities, PRMI, to indemnify the buyer, RFC, for the buyer's own negligence. *Id.*, 332 F. Supp. Ed at 1133.  The Court determined the indemnity agreements satisfied the *DeWitt* standard and concluded the seller, PRMI, was obligated to indemnify RFC for RFC's own negligence. *Id.* at 1134.

   *In re RFC* turned on language in the parties' agreement in which PRMI agreed to indemnify RFC for "any claim, demand, defense or assertion against or involving [ ]RFC based on or ground upon, or resulting from such misstatement or omission [by Defendants] or a breach of any representation, warrant or obligation *made by RFC* in reliance [PRMI's] misstatement or omission." *Id.*, 332 F. Supp. 3d at 1133 (original emphasis).  The indemnity agreement further stated PRMI would indemnify RFC for "liabilities resulting from, inter alia, 'any breach of any representation, warranty or obligation *made by [ResCap]* in reliance upon any warranty, obligation or representation made by the [PRMI] contained in the Client Contract[.]'" *Id.*, 332 F. Supp. 3d at 1122 (emphasis in original).  The Court concluded this language "specifically provides for indemnification based on RFC's own representations, warranties, or obligations[.]" *Id.* at 1134.  PRMI was therefore

obligated to indemnify RFC, and PRMI's indemnity obligation "extend[ed] to claims for negligent representation." *Id.*

Even though the indemnity agreement in *In re RFC* did not expressly use the word "negligence," the indemnity language "nevertheless makes clear the parties' intent to indemnify [ResCap] for its own negligent acts." *In re RFC,* 332 F. Supp. 3d at 1133. The Eighth Circuit affirmed, stating "it is obvious the [contract's] indemnification provisions 'fairly apprise[d]' PRMI of its obligation to indemnify [ResCap] for all of [the] claims," because despite the fact that the indemnity provisions did not expressly include the word "negligence." *ResCap Liquidating Tr. v. Primary Residential Mortg., Inc.,* 59 F.4th 905, 915 (8th Cir. 2023) (*citing DeWitt,* 910 N.W.2d at 417).

*In re RFC* applies with even greater force here.  Whereas the agreement in *In re RFC* did not even mention the word "negligence," Perfekt's Terms & Conditions expressly state the indemnity provision is "strictly limited to liability for acts of negligence." (Ex. D at 2).

Further, the language in the Terms & Conditions fairly apprised Spring Lake of its obligation to indemnify Perfekt from Perfekt's own negligence.  Spring Lake agreed to "*specifically indemnify Perfekt, Inc.* for . . . *any liability created by the filing of the submitted information*." (Ex. D at 2) (emphasis added).  That sentence can only be interpreted as requiring Spring Lake to indemnity Perfekt for Perfekt's own

negligence; indeed, the phrase "the filing of the submitted information" describes the very service Spring Lake paid Perfekt to perform.

This conclusion is confirmed in the next sentence of the Terms & Conditions, which states Spring Lake "agree[s] to *indemnify and defend Perfekt, Inc.* in the event of any dispute that arises *as a result of the filing of this lien*, specifically including, but not limited to, indemnifying and defending Perfekt, Inc. *in the event it is sued for any reason(s) related to the filing of this lien by any party third party*." (Ex. D at 2) (emphasis added). This language tracks the indemnity agreement in *In re RFC* in that it apprises the indemnitor—*twice*—that Spring Lake's duty to defend and indemnify extends to liability (i) arising as a result of Perfekt filing the lien, including (ii) suits against Perfekt, by any third-party, that for any reason are related to Perfekt's lien services.

Both of the circumstances described in the Terms & Conditions are present here: Spring Lake contends it was sued due to Perfekt's negligent lien services, and Perfekt has also been sued for its own, allegedly negligence conduct. Using either passage, the Terms & Conditions "fairly apprise' [Spring Lake] of its obligation to indemnify [Perfekt] for all of [the] claims" Plaintiffs have asserted, satisfying the *DeWitt* standard. *In re RFC*, 59 F.4th at 915 (*quoting DeWitt,* 910 N.W.2d at 417).

## CONCLUSION

Spring Lake's duty to defend and indemnify Perfekt was triggered in two ways: by Spring Lake's misrepresentation that Plaintiffs' property was a remodeling project, and by Perfekt's allegedly negligent lien services. Either way, Spring Lake has a duty to defend and indemnify Perfket. At a minimum, there is a genuine fact dispute regarding whether and to what extent Spring Lake and Perfekt's alleged negligence caused or contributed to Plaintiffs' alleged damages. Accordingly, Spring Lake's motion should be denied.

Dated: August 8, 2025                THOMPSON, COE, COUSINS & IRONS, LLP

                                                     */s/ Christopher L. Goodman*
                                                     Christopher L. Goodman (#0285626)
                                                     370 Wabasha Street North, Suite 1000
                                                     St. Paul, Minnesota 55102
                                                     Telephone: (651) 389-5000
                                                     cgoodman@thompsoncoe.com

                                                     *Attorney for Defendant Perfekt, Inc.*