UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JAMES AND AMANDA TJADEN, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>    Plaintiffs,<br><br>v.<br><br>BRUTLAG, TRUCKE & DOHERTY, P.A., SPRING LAKE PARK LUMBER CO., AND PERFEKT, INC.,<br><br>    Defendants. | Case No.: 0:24-cv-01452-KMM-DJF<br><br><br>**SPRING LAKE PARK LUMBER CO.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT** |

    Perfekt, Inc. is asserting a contractual indemnity claim against its customer Spring Lake Park Lumber, Co., seeking to be indemnified for a claim resulting from a mistake that Perfekt readily admits making. In doing so, Perfekt alleges that Spring Lake made a material misrepresentation when it characterized a $3,900 order as being part of a "Residential Remodel", instead of a "New Construction", project. It is unclear how the characterization of the Project had any bearing on Perfekt's handling of the issuance of pre-lien notice, when it admits that it doesn't take any action to address a pre-lien notice mailing that comes back as "vacant".

    Where Plaintiffs' claims are not based in negligence, Perfekt's claimed entitlement to defense and indemnification fails as a matter of law. Spring Lake

respectfully requests that the Court dismiss Perfekt's Cross-Claim against Spring Lake with prejudice.

## ARGUMENT

**I.  NO NEGLIGENCE CLAIMS HAVE BEEN BROUGHT AGAINST PERFEKT.**

Perfekt attempts to distract the Court from the clear fact that Plaintiffs have not asserted a negligence claim against Perfekt. Simply put, the defense and indemnity provision in the terms and conditions is expressly limited to liability for acts of negligence. (See Passaro Decl. Ex. C). Plaintiffs claims against Perfekt allege intentional torts.

As stated in Spring Lake's moving memorandum, Minnesota law disfavors exculpatory and indemnity clauses. *Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 923 (Minn. 1982). Clauses that exonerate a party from liability are strictly construed against the benefitted party. *Id.* Perfekt is the benefitting party in this case. It drafted the terms and conditions and required its customers to accept them in order to use their services. The exculpatory clause must be strictly construed against Perfekt. In doing so, Perfekt's Cross-Claim against Spring Lake fails as a matter of law because the type of claim that is required to trigger the clause is missing.

While Perfekt argues that negligent misrepresentation is negligence, and the consumer fraud claim independently triggers the defense and indemnity

2

provision, there is no way for it to get around the clear absence of a claim for negligence. In the event that this matter is before a jury, the verdict form will ask the jury to determine whether the elements of each of the intentional tort claims have been met. What will not be included on the verdict form is a question asking the jury to determine whether Perfekt was negligent. Without a negligence claim being asserted against Perfekt, Spring Lake owes no duty to defend and/or indemnify Perfekt.

## II.   SPRING LAKE'S CHARACTERIZATION OF THE PROJECT AS A "RESIDENTIAL REMODEL" IS NOT A MATERIAL MISREPRESENTATION THAT TRIGGERS A CONTRACTUAL DEFENSE AND INDEMNITY OBLIGATION.

Perfekt contends that Spring Lake's having categorized the project as a "Residential Remodel" as opposed to "New Construction" in the Perfekt portal is a material misrepresentation that entitles it to defense and indemnity for the Plaintiffs' claims. For a pre-lien notice to be complete, by statute it must include the project address, who hired them, first and last date of work, type of service provided, and the dollar amount. (See, Doc. 93-1, Goodman Decl. Ex. A, at 68:15-69:4). Mr. Estenson confirmed that this information was correctly provided to Perfekt by Spring Lake. (Doc. 93-1, Goodman Decl. Ex. A, at 46:14-23). However, along with the required questions, Perfekt asks its customers to categorize the project as either "New Construction" or "Remodel". The categorization does not

3

have a material effect on the pre-lien or lien notice itself. (Doc. 93-1, Goodman Decl. Ex. A, at 21:11-14).

Kris Francen of Spring Lake testified that at its inception, the Project was to supply the General Contractor with a single door at a price of $3,900. (See, Doc. #93-2, Goodman Decl. Ex. B. at 55:14-23). Because it was only for one door and the contractor did not give Spring Lake an architectural or building plan, Spring Lake's practice was to code this type of project as a "Residential Remodel". (See, Doc. #93-2, Goodman Decl. Ex. B. at 39:1824). When the Project was entered by Spring Lake into the Perfekt portal it was thus characterized as a "Residential Remodel". (See, Doc. #93-2, Goodman Decl. Ex. B. at 55:14-23). In other words, the only time that Spring Lake would code the project as "New Construction" would be if the customer came to them with a building plan asking to buy the materials to construct a new home. (See, Doc. #93-2, Goodman Decl. Ex. B. at 40:2-8). While Perfekt requests this information from its customers, it does not stress any importance on categorizing the project as a remodel or new construction to its clients. (Doc. 93-1, Goodman Decl. Ex. A, at 89:19-24).

The prelien notice prepared by Perfekt reflects that the project was for $3,900. (See, Passaro Decl. Ex. D). Significantly, at this pre-lien notice stage, Spring Lake had no reason to know that the Project was anything other than a "Residential Remodel". It was only after the pre-lien notice stage that the project

4

grew beyond the supply of a single door. Perfekt implies that Spring Lake should have known at some point that the project was not a remodel because delivery drivers would have seen that it was the site of a new construction project. Kris Francen testified that the delivery drivers do not know the specifics of each project they are delivering materials to, nor would they make an assessment of the type of project they were delivering to and report back to Spring Lake, precisely because Perfekt never told Spring Lake that there might be a difference in their handling of lien notice if it was a new construction project. (Doc. 93-1, Goodman Decl. Ex. A, at 89:19-24; Doc. 93-2, Goodman Decl. Ex. B, at 99:17-100:4).

Mr. Estenson stated that if a property is marked as "New Construction", Perfekt will then look at the deed along with the tax screen to determine if a different mailing address is listed for the owner. When the project is marked as a "Remodel", they only look at the tax screen at the pre-lien stage and do not look at the deed until they send out the lien notice. While Perfekt asserts that if Spring Lake had categorized the project as "New Construction" would have prompted Perfekt to look at the deed at the pre-lien stage, no new information would have been discovered as Mr. Estenson stated that the deed did not show a different mailing address for the Tjadens. (Doc. 93-1, Goodman Decl. Ex. A at 50:24-51:2). Therefore, the categorization of the project had no material effect on Perfekt's job, and it had no material effect on the present matter.

After Perfekt mailed the pre-lien notice, it was returned by the U.S. Post Office as "vacant." (Doc. 93-1, Goodman Decl. Ex. A at 33:20-34:1). It is Perfekt's internal practice that when mail is returned as "vacant," they do nothing more with it. (Doc. 93-1, Goodman Decl. Ex. A at 53:13-18). Spring Lake's categorization of the project as a "Residential Remodel" versus "New Construction" did not alter Perfekt's mailing of the pre-lien notice nor did it alter Perfekt's internal procedures regarding returned mail. Rather, the issue is that when the notice was returned to Perfekt, the U.S. Post Office marked the address as "vacant." In a situation like this where the house number does not exist, the Post Office would normally mark the returned mail as "house number does not exist." (Doc. 93-1, Goodman Decl. Ex. A at 50:3-8). Nothing that Spring Lake did or any information it provided to Perfekt caused the notice to be returned, nor did it cause Perfekt to file the returned notice away without further investigation.

What this all boils down to is Perfekt's internal practices with handling returned mail and a mistake that Mr. Estenson admitted to making himself. Nothing in the record supports a finding that Spring Lake made a material misrepresentation to Perfekt that triggered the contractual defense and indemnity provision. The categorization as a "Residential Remodel" did not change any requirements of the pre-lien notice. Mr. Estenson himself stated that the categorization is not "fail-safe." (Doc. 93-1, Goodman Decl. Ex. A, at 20:9-25). Mr.

6

Estenson also stated that Perfekt does not do anything to alert clients to potential import of categorizing the project as a "Residential Remodel" as opposed to a "New Construction" and the implications as to the presence or absence of a mailbox accessible to the owners. Spring Lake correctly provided all the required information for Perfekt to draft the pre-lien notice. Any issues with the drafting and service of the pre-lien and lien notices were due to Perfekt's own internal procedures, not based on information that was or was not provided by Spring Lake.

### III. PLAINTIFFS' CLAIMS ARE NOT BASED IN NEGLIGENCE AND DO NOT TRIGGER THE CONTRACTUAL DEFENSE AND INDEMNITY PROVISION IN THE TERMS AND CONDITIONS.

In determining whether a negligent misrepresentation claim is a species of fraud, it is instructive to look to insurance coverage opinions construing whether such a claim can be covered. In Minnesota, a negligent misrepresentation is not an occurrence for the purposes of a general liability insurance policy. *Tschimperle v. Aetna Casualty & Surety Co.*, 529 N.W.2d 421, 424 (Minn.App.1995), review denied (Minn. May 31, 1995). The rule that negligent misrepresentation does not constitute an occurrence for general liability purposes is applicable when the negligent misrepresentation is the direct cause of the injury suffered. See *Tschimperle*, 529 N.W.2d at 424 (indicating that misrepresentation of value of investment was itself the event that caused damage, a poor investment). This

7

Court should find similarly in this case: that there is no occurrence triggering the indemnification obligations under the terms and conditions because the negligent misrepresentation by Perfekt was the direct cause of the injury alleged to have been suffered by the Plaintiffs.

Perfekt points to *Med. Protective Co. v. Haefner*, No. 20-CV-2263 (WMW/BRT), 2022 WL 219563 (D. Minn. Jan. 25, 2022) (an unpublished decision lacking any precedential value) for the proposition that defense and indemnity can be available for a claim of negligent misrepresentation because negligent misrepresentation lacks the scienter element essential to a claim of fraud. In that case the court determined that *MedPro* (an insurer) had a duty to indemnify its insured for any liability arising from a successful negligent misrepresentation claim.

The court in *Metro. Prop. & Cas., Ins. Co. v. Flakne* came to the opposite result. This court was asked to determine whether the negligent misrepresentation and Consumer Fraud claims constituted an occurrence under the policy at issue. The court held that the allegations of the underlying case supported the insurer's position that the misrepresentations are not "occurrences" covered by the policy. *Metro. Prop. & Cas., Ins. Co. v. Flakne,* No. CIV. 09-2441, 2010 WL 3033729, at *5 (D. Minn. July 27, 2010).

The federal courts routinely recognize negligent misrepresentation as a species of fraud:

> "The same principles apply to both fraud and negligent misrepresentation cases and ... the only real distinction between negligent misrepresentation and fraud is the absence of the element of knowledge of the falsity of the information disclosed." *Holmes v. Grubman*, 691 S.E.2d 196, 200 (Ga. 2010) (citing *Mindis Acquisition Corp. v. BDO Seidman*, 559 S.E.2d 111 (Ga. Ct. App. 2002), rev'd on other grounds, 578 S.E.2d 400 (Ga. 2003)).

*Int'l Bus. Machines Corps. v. Corning Optical Commc'ns, LLC*, No. 1:18-CV-5027-AT, 2019 WL 13233710, at *12 (N.D. Ga. Sept. 11, 2019); see, also, *Errico v. Pac. Capital Bank, N.A.*, 753 F.Supp.2d 1034, 1049 (N.D.Cal.2010) ("[N]egligent misrepresentation 'sounds in fraud' and is subject to Rule 9(b)'s heightened pleading standard"); under California law, "[n]egligent misrepresentation is a species of fraud or deceit specifically requiring a positive assertion or assertion of fact." *Nido v. Nationwide Mut. Ins. Co.*, No. 19-CV-07724-LHK, 2020 WL 1865324, at *6 (N.D. Cal. Apr. 14, 2020) (quoting *Wilson v. Century 21 Great W. Realty*, 15 Cal. App. 4th 298, 306 (1993). *Lewis v. Paul Revere Life Ins. Co.*, 80 F. Supp. 2d 978, 994 (E.D. Wis. 2000) (quoting *Whipp v. Iverson*, 43 Wis. 2d 166, 169, 168 N.W.2d 201, 203 (1969) ("Fraud is a generic and an ambiguous term. It embraces misrepresentation which may be separated into the three familiar tort classifications of intent, negligence, and strict responsibility."); see also *Bonchek v. Nicolet Unified Sch. Dist.*,

No. 19-CV-425-JPS, 2019 WL 7049803 at *12, 2019 U.S. Dist. LEXIS 219788 at *34 (E.D. Wis. Dec. 23, 2019).

> Negligent misrepresentation is a species of fraud that replaces the required showing of scienter with a showing of negligence. Like actions for fraud, negligent misrepresentation actions typically are based on inference rather than direct evidence. Thus, New York's high standard of "clear and convincing" proof applies to actions for negligent misrepresentation as well as actions for intentional fraud.

*Allen v. Westpoint-Pepperell, Inc.*, 11 F. Supp. 2d 277, 284 (S.D.N.Y. 1997), aff'd on other grounds sub nom. *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71 (2d Cir. 1998).

While Minnesota case law does not give a clear rule on this issue, courts around the country routinely hold that negligent misrepresentation is a species of fraud. Perfekt admits that a Consumer Fraud claim is ostensibly a negligent misrepresentation made in the course of a consumer transaction. Because a negligent misrepresentation claim does not give rise to an occurrence, the defense and indemnity provision in the terms and conditions is also not triggered by the Consumer Fraud Claim.

## CONCLUSION

Spring Lake correctly provided all required information to Perfekt for the pre-lien and lien notices. While the categorization of the project as a "Residential Remodel" may have been incorrect, this error by Spring Lake was not a material misrepresentation. Perfekt did not emphasis any importance as to the accuracy of

10

this information and it did not materially affect the pre-lien and lien notices. The mail tracking on the pre-lien notice came back to Perfekt as "vacant", which if the project really was a "Residential Remodel" should have caused Perfekt some concern. Instead, Perfekt testified that it did not do any follow-up, because it never does – instead taking the position that pre-lien notice is effective upon mailing regardless of whether it was actually received by the property owner. Therefore, mail returned as "vacant" made no difference to Perfekt, and makes no difference as it relates to any defense and indemnity obligation that Spring Lake might have to Perfekt. Finally, because none of the claims Plaintiff has asserted against Perfekt are based in negligence, the defense and indemnity provision in the terms and conditions has not been triggered.

For the foregoing reasons, Spring Lake respectfully requests that the Court enter an order granting summary judgment dismissing Perfekt's contractual indemnity and defense Cross-Claim against Spring Lake on the merits and with prejudice.

Dated: August 22, 2025				*STICH ANGELL P.A.*

				By: s/ Cara C. Passaro
				    Cara C. Passaro, 312587
				France Place
				3601 Minnesota Drive
				Suite 450
				Minneapolis, MN 55435
				612-333-6251
				cpassaro@stichlaw.com

				*Attorneys for Defendant Spring Lake Park Lumber Co.*